**Charles M. DOUGLAS, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–678.**

United States Court of Veterans Appeals.

Submitted April 4, 1991.

Decided Jan. 24, 1992.

As Amended April 28, 1992.

Joseph A. Violante, Washington, D.C., was on the brief, for appellant.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Carolyn F. Washington, Washington, D.C., were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and IVERS and STEINBERG, Associate Judges.

STEINBERG, Associate Judge:

This case is properly before the Court under 38 U.S.C. §§ 7252, 7266 (formerly §§ 4052 and 4066) and involves an appeal by Navy veteran Charles M. Douglas, from a March 23, 1990, Board of Veterans' Appeals (BVA or Board) decision denying service connection for basal-cell carcinoma of the neck. The veteran claims that this disease and others from which he suffers resulted from his exposure at the conclusion of World War II to ionizing radiation from the atomic bomb site at Hiroshima. In addition, during a February 6, 1990, hearing before the BVA, the veteran's representative urged that, alternatively, the Board consider the issue of direct service connection for the appellant's carcinoma based on excessive exposure to the sun during his tenure as a deckhand in the Pacific Theater. The Board did not address this issue in its decision. We hold that the Board erred in its failure to address the issue of direct service connection and in its failure to apply the correct standard in its review of the causal relationship between the veteran's exposure to ionizing radiation and his subsequent development of basal-cell carcinoma of the neck. We also hold that the Board failed in several respects to carry out its statutory duty to assist the claimant. For the reasons stated below, we vacate the Board's decision, re-

tain jurisdiction, and remand the record for readjudication and proceedings consistent with this opinion.

## I. BACKGROUND

The veteran served on active duty in the United States Navy from May 28, 1945, to May 21, 1946. R. at 7–8. During the bulk of this time he served aboard the USS Gainard, while it was stationed in the Pacific Theater from the early fall of 1945 through the spring of 1946. R. at 7, 64. The veteran testified under oath, at his February 6, 1990, hearing before the BVA, that throughout his service aboard the USS Gainard and, prior to that time, aboard the USS Admiral W.S. Benson, he served as a deckhand, performing "the basic work on the ship"—manning the guns, chipping, painting, and bringing in the anchors. R. at 104, 105.

He further testified to the BVA that while stationed in Japan he was transported two times to the atomic bomb site at Hiroshima. R. at 91. The veteran further testified that immediately after his discharge from service he began to experience skin ailments. He noticed "red places" and "scabby areas" on his face. R. at 107. He recounted that in the 1950s his physician removed what the veteran believed was a cancerous growth from his neck. R. at 97. In addition, he recalled, although he could not furnish dates, that a cancerous growth was removed from his eyelid and another from his lower back. R. at 100, 103–104, 106. The record does not contain any medical records pertinent to these assertions.

The veteran's skin problems also included the development on his neck of a basal-cell carcinoma ("an epithelial tumor that seldom metastasizes but has potentialities for local invasion and destruction" (*Dorland's Illustrated Medical Dictionary* 272 (27th ed. 1988) (*Dorland's*)) which was excised by a private physician in 1973. In a letter dated September 15, 1987, the physician, Dr. Abraham stated in pertinent part:

On October 2, 1973 a basal cell carcinoma was excised from the right neck. He has also sun damaged skin … along with an occasional actinic keratosis ["a sharply

outlined, red or skin-colored, flat or elevated" rough or warty growth which "may give rise to a squamous cell carcinoma … and is caused by excessive exposure to the sun" (*Dorland's* at 875) ].

R. at 51.

On several occasions between 1984 and 1986, a private physician, Dr. Yarbrough, diagnosed the appellant as having numerous "actinic keratoses". They appeared twice in 1984 on his scalp, forehead, cheeks, neck, and the left side of his nose. In 1985, the actinic keratoses persisted in these areas, as well as the chest and right ear. · In 1986, such growths were again diagnosed on the appellant's forehead, ears, nose, lip, and back. On each occasion, Dr. Yarbrough removed the actinic keratoses using "cryosurgery" ("destruction of tissue by the application of extreme cold" (*Dorland's* at 403)). R. at 40.

The veteran testified under oath to the BVA that there is no family history of skin problems or skin cancer. R. at 47, 94. Moreover, with regard to his lifestyle after service, he testified:

I came back and I was a rate clerk and a dispatcher for a trucking company. That is inside work of course. And then I went to Marshall University and I graduated from there. Then I worked for the International Nickel Company. I worked for them for 26 years. I was their inside supervisor for their inside sales personnel. This went on until I was disabled 13 years ago.

R. at 96. In response to a question from a panel member, he indicated that his exposure to the sun after discharge was "no more than the average inside office worker." R. at 97.

In addition to the skin problems that the veteran developed after his discharge from the service, he acquired a variety of other impairments that he claims are service-connected. On June 23, 1987, the veteran reopened a claim for service connection based on "radiation exposure" with regard to all of these impairments. R. at 49. (In August 1986, the veteran had filed a similar claim (R. at 16); although the record does

not reflect the disposition of that claim, it seems fair to assume that it was denied). The Veterans' Administration (now the Department of Veterans Affairs) (VA) Regional Office (RO) denied his claim in a rating decision dated August 12, 1987. The BVA has remanded these other claims to the originating agency. *Charles M. Douglas*, BVA 89–03499 (hereafter *Douglas*), at 2 (Mar. 23, 1990).

Subsequent to the August 12, 1987, rating decision, the RO reopened the veteran's claim after receiving Dr. Abraham's letter indicating the sun-damaged skin, the occasional actinic keratosis, and the removal of the basal-cell carcinoma from the neck. R. at 51. It requested and obtained from the Defense Nuclear Agency (DNA) a report analyzing the level of radiation to which the veteran was exposed at Hiroshima. R. at 64. The report stated that a scientific dose reconstruction had determined that the maximum possible radiation dose received externally, inhaled, or ingested by an individual at either Hiroshima or Nagasaki for the full duration of the occupation, under the worst-case scenario, equaled less than one rem. Based on this finding, it concluded that the "great majority" of occupation forces probably received no radiation exposure. *Ibid.*

Ultimately, the VA's Chief Benefits Director (CBD), in an undated letter to the RO, concluded, pursuant to 38 C.F.R. § 3.311(c)(1)(ii) (1991), that there was "no reasonable possibility that the veteran's disability was the result of such exposure." R. at 69. In a rating decision, dated April 18, 1989, the RO again denied the veteran's claim, stating that the sole issue for consideration was "basal cell carcinoma of the skin secondary to exposure to ionizing radiation." R. at 73. In the Statement of the Case, the RO stated in its "REASONS FOR DECISION":

A well-known risk factor in the development of basal cell carcinoma is exposure to the sun. The medical evidence also indicates the presence of actinic keratoses which are due to excessive exposure to the sun. The evidence indicates the veteran's basal cell carcinoma is more likely due to exposure to the sun rather than the low levels of ionizing radiation he would have been exposed to while in Hiroshima.

R. at 83. The decision stated nothing about the potential for the veteran to establish direct service connection, pursuant to 38 U.S.C. § 1110 (formerly § 310) and 38 C.F.R. § 3.303(a) (1991), based on excessive exposure to the sun during service.

On June 20, 1989, the veteran appealed this decision to the BVA on the basis that in considering his claim for service connection based on exposure to ionizing radiation, the RO should have addressed not only the basal-cell carcinoma of the neck but also the other disorders the veteran had included in his claim. R. at 84–85. At the February 6, 1990, hearing before the BVA, the veteran's representative urged the Board to address the appellant's claim regarding basal-cell carcinoma in two alternative ways, either as the result of ionizing radiation or as the result of direct service connection on the basis of excessive exposure to the sun during service. R. at 89–90, 107–108, 108. He specifically referred to the sun-exposure thesis three times. *Ibid.* He also suggested that the Board obtain additional medical evidence from Dr. Abraham to corroborate the veteran's testimony. R. at 108.

In its decision, dated March 23, 1990, the Board did not address the sun-exposure thesis. Rather, the Board framed the issue before it as "entitlement to service connection for basal cell carcinoma of the neck" and addressed only ionizing radiation as a possible cause. *Douglas* at 2. The "EVIDENCE" considered by the panel included the report of the DNA, medical records, and other materials relating to the veteran's alleged exposure to ionizing radiation at Hiroshima. However, the Board did not categorize as evidence the reference in the medical records to the veteran's "sun-damaged" skin or the references in the RO rating decision and BVA hearing to this potential cause of his illness. Instead, it stated that Dr. Abraham had "treated the veteran for **damaged skin** and actinic keratosis." R. at 3 (emphasis added). In its enumeration of the applicable law and reg-

ulations, the Board did not include reference or citation to the statutory provision and the corresponding regulation (38 U.S.C. § 1110; 38 C.F.R. § 303(a)) under which the veteran is potentially entitled to direct service connection based on exposure to the sun during service. *Douglas* at 4. Nor did it state the standard that the CBD is required to apply under 38 C.F.R. § 3.311b(c)(1) regarding exposure to ionizing radiation.

In the "DISCUSSION AND EVALUATION" and "FINDINGS OF FACT" sections, the Board opined that the veteran "was probably exposed" to minimal radiation which "probably played no causal role in his development of skin cancer." *Douglas* at 5. Thus, it concluded that "[b]asal cell carcinoma of the neck was not incurred in or aggravated by wartime service, and its incurrence in service may not be presumed." *Douglas* at 6.

## II. ANALYSIS

### A. Consideration of the Entire Evidence

■ The BVA decided the veteran's claim for disability compensation for basal-cell carcinoma of the neck based solely on the veteran's contention that the disease was caused by his exposure to ionizing radiation at Hiroshima. *Douglas* at 2. Although in his Notice of Disagreement or substantive appeal to the BVA (R. at 75, 85), the veteran had not rested his claim on the alternative ground of direct service connection, under 38 U.S.C. § 1110 and 38 C.F.R. § 303(a) (1991), based on sun exposure during service, his representative had thrice raised that thesis in the BVA hearing and substantial evidence existed in the record and hearing before the BVA in support of that thesis. Consequently, the BVA's failure to address that issue violated 38 U.S.C. § 7104(a) (formerly § 4004), which requires in pertinent part:

Decisions of the Board shall be based on the **entire record in the proceeding** and upon **consideration of all evidence and material of record and applicable provisions of law and regulation.**

*Ibid.* (Emphasis added.) Implementing this provision is 38 C.F.R. § 3.303(a) which requires that:

[d]eterminations as to service connection **will be based on review of the entire evidence of record,** with due consideration to the policy of the Department of Veterans Affairs to administer the law under a broad and liberal interpretation consistent with the facts in each individual case.

38 C.F.R. § 3.303(a) (1991) (emphasis added).

Specifically, the Board did not address the following evidence: (1) the veteran's sworn testimony that he was stationed in the Pacific Theater during much of his tenure and served as a deckhand (R. at 104–105, 108), that his family history showed no skin cancer or skin problems (R. at 94–95), and that since his discharge from service his employment activities had been indoors and he had not engaged in any significant outdoor recreational activities (R. at 96, 97); (2) the physician's report that the veteran has had a number of skin growths, at least one of them malignant (R. at 40, 51, 100, 103–104, 106); (3) a BVA panel member's comment on the veteran's fair complexion (R. at 107); (4) Dr. Abraham's letter recounting that the veteran not only had a basal-cell carcinoma, which the physician removed from his neck in 1973, but also that the appellant had "sun-damaged skin ... along with an occasional actinic keratosis" (R. at 51); (5) Dr. Yarbrough's treatment records indicating that between 1984 and 1986 he saw the veteran four times for treatment of actinic keratoses (R. at 40); and (6) the rating board's statement that "[t]he evidence indicates the veteran's basal cell carcinoma is more likely due to exposure to the sun [rather than to ionizing radiation]" (R. at 83).

■ The Board's failure to address this evidence or the potential for establishing direct service connection based on this evidence does not necessarily lead to the logical conclusion that it did not "consider" the evidence. However, as discussed in part B, below, the Board was also statutorily required to address in its decision the evi-

dence it considered, and its failure so to address the evidence is thus conclusive on the issue of whether or not it complied with its obligation under section 7104(a) to consider all the evidence. Hence, the Court concludes that the Board failed to consider "all evidence and material of record" and "the entire record in the proceeding" as statutorily mandated by section 7104(a) or "the entire evidence of record" as required by regulation under 38 C.F.R. § 3.303(a). Moreover, because the evidence outlined above was sufficiently substantial to constitute at least a well-grounded claim for direct service connection, *see* 38 U.S.C. § 5107(a) (formerly § 3007), *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990) ("A well grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation"), we hold that the section 7104(a) error was "prejudicial" within the meaning of 38 U.S.C. § 7261(b) (formerly § 4061).

### B. Reasons or Bases

 Concomitant with the Board's failure to consider relevant testimonial and other evidence is its failure to carry out its obligation under 38 U.S.C. § 7104(d)(1) (formerly § 4004) to state the reasons or bases supporting its decision. As suggested above, even if the Board in fact did consider, in connection with the issue of direct service connection for excessive sun exposure during service, all the evidence outlined above, and dismissed it and the issue, the Board was required, under section 7104(d)(1), to state "the precise basis for [its] decision [and its] response to the various arguments advanced by the claimant". *Hatlestad v. Derwinski*, 1 Vet.App. 164, 169 (1991) (citing *Gilbert v. Derwinski*, 1 Vet.App. 49, 56–57 (1990)). The fulfillment of this task requires "an analysis of the credibility or probative value of the evidence submitted by and on behalf of the veteran in support of his claim [and] a statement of the reasons or bases for the implicit rejection of this evidence by the Board." *Gilbert*, 1 Vet.App. at 59; *Hatlestad*, 1 Vet.App. at 169; *Peyton v. Derwinski*, 1 Vet.App. 282, 285 (1991).

By the veteran's sworn testimony, he served as a deckhand in the Pacific Theater for several months. R. at 104–105. He also testified that immediately upon discharge he began to suffer from skin ailments and eventually developed at least one carcinoma which had to be removed. R. at 97, 100, 103, 106, 107. In the same letter that discussed the removal of the basal-cell carcinoma from the veteran's neck, Dr. Abraham stated that the veteran had sun-damaged skin. R. at 51. At the veteran's BVA hearing, it was adduced that he has fair skin, has had no family history of skin problems, and had worked indoors upon his return from service. R. at 95, 96–97, 107. In light of the evidentiary record, whether the Board believed that the veteran did or did not demonstrate the applicability or potential applicability of the statutory provisions and regulations relating to direct service connection, 38 U.S.C. § 1110 and 38 C.F.R. § 3.303(a), it should have so stated and provided the reasons or bases for its conclusions. *See Peyton*, 1 Vet.App. at 286–87.

Direct service connection for a disease or injury may be established by demonstrating that it was actually incurred in or aggravated during military service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). A claim for direct service connection for skin cancer (or for any other illness or injury) is not invalid, as a matter of law, if evidence of it did not manifest during service or within one year thereafter. Manifestation within the applicable rebuttable presumption period simply entitles a veteran to a presumption of service connection so long as other requirements of the presumption provisions are established. *See* 38 C.F.R. § 3.307(a), (d) (1991). VA has made efforts in its regulations to ensure that the presumptions are used to aid a veteran in his or her ability to obtain disability benefits rather than to impede that ability. The regulations provide in pertinent part:

> Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. **Presumptive periods are not intended to limit**

service connection to diseases so diagnosed when the evidence warrants direct service connection. **The presumptive provisions of the statute and Department of Veterans Affairs regulations implementing them are intended as liberalizations applicable when the evidence would not warrant service connection without their aid.**

38 C.F.R. § 3.303(d) (1991) (emphasis added); *see generally Sokowski v. Derwinski,* 2 Vet.App. 75, 78 (1991). Consequently, the development of a cancerous growth or of multiple growths years after service does not eradicate the veteran's potential for recovery under 38 U.S.C. § 1110 and 38 C.F.R. § 3.303(a).

### C. Duty to Assist Regarding Direct Service Connection

▮ The Court has held that 38 U.S.C. § 241(2) (reenacted as § 7722(c) by Pub.L. No. 102–83, § 2(a), 105 Stat. 378 (1991)) imposed, inter alia, at the time in question an affirmative duty to distribute, on an individualized basis, "full information to eligible veterans ... regarding all benefits and services to which they may be entitled under laws administered by [VA]". *See Akles v. Derwinski,* 1 Vet.App. 118, 121 (1991). Because of the nonadversarial nature of the VA benefits program, exemplified in this provision, a claimant's claim may not be ignored or rejected by the BVA merely because it does not expressly raise the provision which corresponds to the benefits sought. *Akles,* 1 Vet.App. at 121. Consequently, when confronted with evidence demonstrating the potential applicability of a statutory provision or regulation that was not expressly raised by the claimant earlier, the BVA must inform the claimant that he or she may be eligible under that provision.

In *Akles v. Derwinski,* the appellant was eligible for a benefit, entitlement to which he had not raised below. There, the Court stated in pertinent part:

There is no requirement in the law that a veteran must specify with precision the statutory provisions or the corresponding regulations under which he is seeking

benefits. Section 241(2) places the burden on the Secretary to 'distribute full information to eligible veterans ... regarding all benefits and services to which they may be entitled under laws administered by the Department of Veterans Affairs.'

*Akles,* 1 Vet.App. at 121 (quoting 38 U.S.C. § 7722(c) (then § 241(2)).

▮ Similarly, even though the appellant in the instant case raised for the first time before the BVA the issue of direct service connection for basal-cell carcinoma resulting from sun exposure in service, the record, described in part A, above, is replete with references to a relationship between excessive sun exposure and the skin cancer and with grounds for inferring that this exposure could reasonably have been attributable to service.

Thus, the Board should have inferred a claim for direct service connection and should have then informed the veteran, pursuant to 38 U.S.C. § 241(2), of his potential entitlement under that claim. For the Secretary or the Court to require a claimant to "develop expertise in laws and regulations on veterans benefits before receiving any compensation" would eliminate the nonadversarial policies around which the veterans benefits program was established. *Ibid.*

The continuum requiring the Secretary to aid veterans and their dependents in the claims process is carried one step beyond the Secretary's section 241(2) duty by his additional statutory duty to assist a claimant who has submitted a well-grounded claim. Although section 241(2) requires the Secretary to "distribute full information" in a neutral manner to eligible veterans and their dependents about benefits to which they may be entitled, 38 U.S.C. § 5107 (formerly § 3007) requires the Secretary to do more—"assist" veterans who have submitted well-grounded claims "in developing the facts pertinent to the claim." This duty to assist extends to all issues raised by a liberal reading of the substantive appeal (*see* 38 C.F.R. § 19.-123(a) (1991)) as well as "all [other] doc-

uments or oral testimony submitted prior to the BVA decision." *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991).

Here, the numerous references in the veteran's sworn testimony and elsewhere in the record, indicating a potential relationship between his basal-cell carcinoma and sun exposure in service as a deckhand, implicitly raised the issue of direct service connection for his basal-cell carcinoma. Thus, the veteran had submitted a well-grounded claim, a "plausible" one, one "capable of substantiation". *Murphy,* 1 Vet. App. at 81. The Secretary was, therefore, required to aid the veteran in developing pertinent facts on the issue of sun exposure during service and its relationship to his subsequent development of skin cancer. Here, such assistance would have required a VA compensation and pension (C & P) examination, or an independent medical examination, evaluating the veteran's service and medical history to determine whether his deckhand exposure to the sun could reasonably have caused his basal-cell carcinoma. *Accord Sokowski,* 2 Vet.App. at 77 (duty to assist required, at a minimum, a C & P examination or independent medical evaluation to determine whether actinic keratoses which developed into basal-cell carcinomas in veteran who served in Pacific theater were service-connected). Furthermore, because the appellant's medical evidence of record provided diagnoses only as recent as 1987, an examination was also necessary to determine whether and to what extent the appellant continues to suffer with basal-cell carcinomas.

### D. Failure to Adhere to 38 C.F.R. § 3.103(c)(2)

█ Related to the BVA's duty to assist a veteran who submits a well-grounded claim is the following regulatory duty imposed on VA personnel who conduct hearings:

It is the responsibility of the VA personnel conducting the hearings to explain fully the issues and suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position.

38 C.F.R. § 3.103(c)(2) (1991). Although this regulation does not expressly refer to the BVA, its application to the Board is demonstrable. Chapter 19 of 38 C.F.R., entitled "Board of Veterans [sic] Appeals", is not the only set of regulations applicable to the Board. 38 U.S.C. § 7104(c) provides that the Board is bound in its decisions "by [inter alia] the regulations of the Department [of Veterans Affairs]". The corresponding regulation, 38 C.F.R. § 19.103 (1991), provides: "The Board shall be bound by the laws and regulations of the Department of Veterans Affairs". In addition, there exists in that chapter 19 a cross reference to 38 C.F.R. § 3.103. Section 19.101(c) discusses the Department's policy of "providing assistance to the appellant", and concludes with a cross reference which states: *"Due Process—procedural and appellate rights with regard to disability. . . .* See § 3.103." These statutory and regulatory provisions thus make clear that the BVA is required to adhere to chapter 3 in its adjudications; whereas chapter 3 is intended to apply to all adjudicative bodies throughout the VA claims process, chapter 19 is intended to establish only those duties and procedures peculiar to the BVA. We, therefore, hold that section 3.103(c)(2) is fully applicable to the BVA.

█ In light of the duty imposed on the BVA by section 3.103(c)(2), the Board should have fully explained to the veteran that his exposure to the sun during service, his later development of basal-cell carcinoma, and his physician's statement about his sun-damaged skin raised the issue of direct service connection for his illness. This would have enabled the veteran to focus on submitting proof on that issue. Accordingly, the Board should have suggested the submission of evidence necessary to establish that claim, such as a medical opinion explicitly concerning the relationship between the veteran's sun exposure in service and the development of the illness, as well as additional lay evidence.

### E. Radiation Claim—Application of the Standard Set Forth in § 3.311b(c)(1)(ii)

█ When it is determined, pursuant to 38 C.F.R. § 3.311b(b) (1991), that a veteran

(1) was exposed to ionizing radiation during service, (2) subsequently developed a radiogenic disease as described in the regulation, and (3) manifested the disease within one of the time frames specified in the regulation, the claim is referred to the CBD, pursuant to section 3.311b(b)(iii), for consideration under 38 C.F.R. § 3.311b(c). Under section 3.311b(c), the CBD must determine, based on "sound scientific and medical evidence", whether it is "at least as likely as not" that the veteran's disease resulted from exposure to radiation in service, or whether there is "no reasonable possibility" that the veteran's disease resulted from exposure to radiation in service. If the CBD is unable to draw either conclusion, he or she is required to "refer the matter to an outside consultant." 38 C.F.R. § 3.311b(c)(i), (ii). Pursuant to section 3.311b(c)(ii), if the CBD determines that there is "no reasonable possibility" that the veteran's disease resulted from radiation exposure in service, the CBD must inform the RO in writing of that conclusion and the rationale for it.

In this case, the CBD concluded that there is "no reasonable possibility that the veteran's disability was the result of such exposure." R. at 69. The BVA, in its review of the RO denial of the claim, erred by veering from this standard (as did the RO (R. at 83)). In its "Findings of Fact" the Board stated that the "radiation exposure *probably* played no causal role in his development of skin cancer." *Douglas* at 5. "[T]he BVA, in reviewing the RO denial of the claim, must use the same standard for its decision as that ... set forth in 38 C.F.R. § 3.311b(c)(1) and (2)." *Sawyer v. Derwinski*, 1 Vet.App. 130, 135 (1991). The Court has held that the "absence of 'probability' [imposes] a higher standard [of proof on the veteran's evidence] than 'no reasonable possibility'". *Ibid.* Consequently, it is critical that a BVA or RO review of a CBD opinion seek to ensure that there is "no reasonable possibility" that a veteran's skin cancer resulted from exposure to radiation, rather than to conclude that such a nexus "probably" did not occur. Thus, the veteran's claim that his skin cancer was caused by ionizing radia-

tion must be readjudicated de novo in conformance with the guidelines in 38 C.F.R. § 3.311b(b) and (c). *See Sawyer*, 1 Vet. App. at 133–34, 135.

### III. CONCLUSION

Accordingly, the Secretary's motion for summary affirmance is denied, since the Court is not satisfied that the criteria set forth in *Frankel v. Derwinski*, 1 Vet.App. 23, 25–26 (1990), have been met. For the foregoing reasons, the Board's March 23, 1990, decision is vacated, the Court retains jurisdiction, and the record is remanded to the Board for prompt readjudication and proceedings consistent with this opinion. On remand, the Board shall consider the entire evidence of record. Furthermore, it shall assist the veteran by obtaining a medical examination, which explicitly addresses the issue of direct service connection as a result of sun exposure, and permit, indeed invite, the veteran to submit new evidence with respect to that claim. The Board shall provide in its decision an adequate statement of reasons or bases for its conclusions, including "an analysis of the credibility or probative value of the evidence submitted by ... the veteran in support of his claim, [and, if it rejects the claim,] a statement of the reasons or bases for the ... rejection of this evidence". *Gilbert*, 1 Vet.App. at 59. Finally, the Board shall utilize the proper standard, as set forth in 38 C.F.R. § 3.311b(c) in reviewing the veteran's radiation exposure claim. The Secretary shall file with the Clerk of the Court and serve upon the appellant a copy of the Board's decision on remand. Within 14 days after such filing, the appellant shall notify the Clerk whether he desires to seek further review by the Court.

**VACATED AND REMANDED.**