Joseph B. SOUTH, Appellant,

v.

Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.

No. 90–574.

United States Court of Veterans Appeals.

May 20, 1992.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

The appellant, veteran Joseph B. South, appeals a February 14, 1990, Board of Veterans' Appeals (BVA or Board) decision denying him entitlement to service-connected disability compensation based on individual unemployability, under 38 C.F.R. § 4.16(a) (1991), resulting from service-connected coronary artery disease, pulmonary emphysema, and bilateral defective hearing. *Joseph B. South*, BVA 90–04523 (Feb. 14, 1990). On July 15, 1991, he submitted a brief requesting that the Court find the Board's conclusions of fact clearly erroneous, or, in the alternative, that the Court remand the case to the BVA. On September 19, 1991, the Secretary of Veterans Affairs (Secretary) moved for a remand and to stay further proceedings. Summary disposition is appropriate because the case is one "of relative simplicity" and the outcome is controlled by our precedents and is "not reasonably debatable". *Frankel v. Derwinski*, 1 Vet.App. 23, 25–26 (1990). For the reasons set forth below, the BVA decision will be reversed on the issue of the veteran's entitlement to disability compensation based on unemployability and remanded for adjudication of the question of whether the veteran is entitled to a schedular disability rating above 30% for his pulmonary emphysema.

## I.

The veteran, honorably discharged from the military in 1969, served on active duty for over 20 years. *South*, BVA 90–04523, at 2. He underwent two years of college education and obtained a law school education. *Ibid.* From 1971 through February 1982, he worked in the field of accounting, but, he contends, has been too disabled to work since the Spring of 1982. R. at 19. He is presently entitled to receive service-connected disability compensation for coronary artery disease, evaluated as 60% disabling, for pulmonary emphysema, evaluated as 30% disabling, and for defective bilateral hearing, evaluated as 20% disabling. R. at 51. Together, the veteran's service-connected disabilities are evaluated as 80% disabling. *South*, BVA 90–04523, at 2; *see* 38 C.F.R. § 4.25 (1991).

On July 16, 1987, the veteran received a medical examination from the Veterans' Administration (now Department of Veterans Affairs) (VA) upon his request. R. at 7. On the request form, he noted that he was unable to exert "any effort" and became "completely out of breath" when walking or engaging in any movement. R. at 8. In recording the veteran's medical history, the VA examining physician noted: "For at least 15 years he has been short of breath getting gradually worse.... 1 flight of stairs will get him completely out of breath". R. at 15. The VA physician diagnosed the veteran as suffering from, inter alia (1) "[c]hronic obstructive pulmonary disease" and (2) "[a]therosclerotic coronary artery disease with history of probable myocardial infarction without angina with mild congestive heart failure". R. at 16. The veteran's "regular rhythm" was "considerably compromised" and the prognosis was "guarded". *Ibid.* The physician made no statements regarding the veteran's ability to work.

On March 25, 1988, the veteran submitted an application to the VA for an increase in disability compensation based on individual unemployability, which was denied by the Regional Office (RO) in a rating decision dated August 29, 1988. R. at 27; *see* 38 C.F.R. § 4.16(a). In Novem-

ber 1988, he filed a Notice of Disagreement with the RO's decision, asserting that he had tried to work since 1982, but would become "exhausted and [could not] continue". R. at 28. In his substantive appeal to the BVA, filed on January 4, 1989, he requested that he be awarded disability compensation based on his unemployability and stated that his "breath gives out with the slightest amount of physical activity" and that "[i]t is difficult for [him] to walk more than a very short distance without stopping to rest". R. at 33. In closing his appeal, he reiterated that he was "not able to work and should be rated as total and permanent". *Ibid.* In support of his contention, the veteran submitted letters from two private treating physicians.

In the first, a letter dated January 18, 1989, Dr. Henry A. Liberman described the veteran as suffering from "coronary artery disease including an extensive anterior myocardial infarction and severe chronic lung disease with emphysema as well as several other less complicated medical conditions". R. at 34. He stated that the veteran developed "chest discomfort with rather minimal provocation" and became "easily fatigued" and "short of breath with minimal exertion", all because of his service-connected heart and lung diseases. He concluded: "I believe that Mr. South is totally and permanently disabled and it would be hazardous for him to seek employment." *Ibid.*

In a similarly definitive letter, dated January 20, 1989, Dr. Gerald W. Staton, Jr., wrote that he had been following the veteran for several years for chronic obstructive pulmonary disease and that he was writing in support of the veteran's contention that he is totally disabled. R. at 35. He stated that then-recent pulmonary function tests showed that the veteran suffers from "a severe and irreversible obstructive defect that clearly places him in a totally disabled category". *Ibid.*

In March 1989, the veteran requested a VA medical examination, registering previously mentioned complaints and adding that he tires so much from bathing that he must lie down for 45 minutes to an hour afterwards. R. at 38. Within the March 14, 1989, report of this examination are conflicting medical opinions as to the severity of the veteran's pulmonary disease. The radiologist, who performed the chest x-ray, stated that the veteran suffered from "moderate COPD" (chronic obstructive pulmonary disease) and "mild aortic atherosclerosis". R. at 43. The examining physician, who performed the examination without the veteran's claims file, and, thus, without the veteran's history, stated in his report that the veteran suffered from "chronic obstructive pulmonary emphysema, *severe*", and "organic heart disease". R. at 49 (emphasis added). The cardiac status and prognosis were "[m]oderately compromised; fair with therapy". *Ibid.* As with the 1987 VA examination report, this report contained no discussion of the veteran's ability to work.

In a rating decision dated May 5, 1989, VA denied the veteran's request for a finding of total disability based on individual unemployability under 38 C.F.R. § 4.16(a). However, the RO did increase from 10% to 30%, for which rating the disability must be "moderate", the veteran's schedular disability rating for pulmonary emphysema, even though the veteran had not explicitly raised that issue in his claim form. R. at 50; *see* 38 C.F.R. § 4.97, Diagnostic Code (DC) 6603 (1991).

## II.

On February 14, 1990, the BVA rendered a decision denying the veteran's claim for total disability compensation based on his unemployability. *South,* BVA 90–04523. In discussing the evidence before it, the Board acknowledged that the combination of the veteran's disabilities rendered him disabled, under the schedular evaluation, to a degree of 80%, and it discussed the 1987 and 1989 VA examinations and the private treating physicians' opinions. *Id.* at 2–3. In evaluating the veteran's claim, however, the BVA did not explain why it rejected the opinions of the two private treating physicians, Dr. Liberman and Dr. Staton, that the veteran is totally and permanently disabled. *Id.* at 4–

5. It also failed to explain its cursory and conclusory statement that the veteran's service-connected diseases do not preclude a "wide variety of sedentary tasks, not requiring strenuous manual labor". *Ibid.* It stated only:

A review of the evidence currently of record indicates that the veteran's principal service-connected disabilities are atherosclerotic heart disease, chronic obstructive pulmonary disease, and bilateral hearing loss. While these disabilities and other service-connected disabilities limit the range of the veteran's employment opportunities, they do not preclude all forms of substantially gainful employment.

*Ibid.*

Moreover, despite the strong evidence in favor of the veteran's claim and the total absence of contradictory evidence suggesting that he is able to work, the Board did not explain the inapplicability of the benefit-of-the-doubt doctrine to his case. 38 U.S.C. § 5107(b) (formerly § 3007); *South,* BVA 90–04523, at 5. The Board's failure to explain its findings on all of these matters constitutes a violation of the requirement of 38 U.S.C. § 7104(d)(1) (formerly § 4004) that the Board explain the reasons or bases for its "findings and conclusions" on "all material issues of fact and law presented in the record". *See Bailey v. Derwinski,* 1 Vet.App. 441, 447 (1991); *Gilbert v. Derwinski,* 1 Vet.App. 49, 57, 59 (1990) (Board must identify findings crucial to decision and account for evidence which it finds persuasive or unpersuasive; if two permissible views of evidence exist, then bare conclusion that benefit-of-the-doubt doctrine does not apply is insufficient).

▆ Recognizing these deficiencies in the BVA decision, the Secretary has moved the Court to remand the case to the Board for the issuance of a supplemental decision or further action. Appellee's Mot. for Remand, at 1. The appellant asserts that, instead, the case should be reversed and judgment entered in favor of his claim on the ground that the Board's findings of fact regarding his employability were clearly erroneous. Appellant's Response.

▆ Under 38 U.S.C. § 7261(a)(4) (formerly § 4061) and *Gilbert,* the Court must set aside a finding of material fact as clearly erroneous when the Court is left with a definite and firm conviction, after reviewing the entire evidence, that a mistake has been committed. The Court may reach that conclusion only if there is no " 'plausible basis in the record' " for the BVA findings at issue. *Gilbert,* 1 Vet.App. at 52–53 (quoting *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)); *see Robert Moore v. Derwinski,* 1 Vet.App. 356, 358 (1991). Thus, if there were in the record in this case a plausible basis for the BVA's findings of fact and conclusions, the Court would be precluded from adopting appellant's request for reversal. Just as clearly, where there is no plausible basis the Court *"shall . . . set aside such finding."* 38 U.S.C. § 7261(a)(4) (emphasis added).

The BVA decision leaves the Court with nothing to review on the unemployability issue other than the appellant's unrebutted evidence. *See Meister v. Derwinski,* 1 Vet. App. 472, 473 (1991). In its "DISCUSSION AND EVALUATION", the BVA did not point to a single piece of positive evidence supporting its conclusion that the veteran is able to pursue substantially gainful employment. *See Hersey v. Derwinski,* 2 Vet.App. 91, 94 (1992) (Court held clearly erroneous, in light of "uncontroverted evidence" in appellant's favor, BVA finding that veteran could pursue substantially gainful employment); *Moore,* 1 Vet.App. at 359 (Court held clearly erroneous BVA finding that veteran could engage in substantially gainful employment where Board relied on marginal employment or employment which is only theoretically possible); *see also Garrett v. Derwinski,* 2 Vet.App. 334 (U.S.Vet. App.1992) (Court held clearly erroneous BVA finding that appellant's dental malocclusion was not related to service where record contained private dentist's opinion that appellant's condition was "likely caused" by in-service injury and where VA examination was not inconsistent with that conclusion). Nor did the Board present

any medical evidence to contradict the definitive opinions of Dr. Liberman and Dr. Staton that the veteran's service-connected disabilities have left him "totally disabled", making the "seek[ing] of employment" "hazardous". R. at 34, 35.

The Secretary has conceded that the BVA's rationale for its determination that the veteran is able to work is "sparse" and that the Board did not point to evidence in the record to support its view. Appellee's Mot. for Remand, at 3–4. The Secretary suggests that on remand the "BVA must point to the clinical evidence in the record which establishes that the veteran is able to engage in substantially gainful employment". *Id.* at 4. "The Secretary's candor is commendable". *Crandell v. Derwinski,* 2 Vet.App. 113, 115 (1992). However, the Secretary does not point to the existence in the record of any such evidence. He certainly had ample opportunity to do so, especially given the contentions in appellant's brief. When the Secretary chooses to forego filing a brief addressing all the issues on appeal and, instead, files a motion for remand in order to shore up an unsupportable BVA decision, then neither he nor the BVA is entitled to a second bite at the apple.

## III.

▉ The BVA must consider *all* the evidence before it, and the legal issues arising therefrom, and it must explain its reasons or bases for its findings and conclusions with respect to those issues. *See* 38 U.S.C. § 7104(a), (d); *Douglas v. Derwinski,* 2 Vet.App. 103, 107 (1992). Although a request for an increase in the schedular rating for the veteran's emphysema was not squarely presented to the BVA, evidence of record strongly suggested that a higher schedular disability rating was warranted, or, at least, that an attempt to resolve conflicting evidence should have been made by the Board. In the face of one opinion by a VA radiologist that the pulmonary emphysema is "mild" stand two medical opinions by a treating and a VA physician that the veteran's pulmonary disease is "severe". To this degree of disability, the VA rating schedule assigns a 60% disability. *See* 38 C.F.R. § 4.97, DC 6603; *see also* 38 C.F.R. § 4.7 (1991) (where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability more nearly approximates its criteria).

"There is no requirement in the law that a veteran must specify with precision the statutory provisions or the corresponding regulations under which he is seeking benefits." *Akles v. Derwinski,* 1 Vet.App. 118, 121 (1991); *see* 38 U.S.C. § 7722(c), (d) (formerly located in § 241(2), (3)); *see also Douglas,* 2 Vet.App. at 109; *Morris v. Derwinski,* 1 Vet.App. 260, 264–65 (1991); *Littke v. Derwinski,* 1 Vet.App. 90, 92 (1990). Thus, the Board's failure to consider, or acknowledge that it did consider, the evidence before it which strongly suggested that the veteran was entitled to a 60% schedular disability rating for his pulmonary emphysema was in violation of 38 U.S.C. § 7104(a) and (d)(1). *See Douglas,* 2 Vet.App. at 107–08. Indeed, the RO, when presented with the same medical evidence that the BVA later would face and a substantive Form 1–9 appeal in which the veteran asked explicitly only that he be awarded compensation based on unemployability, evaluated the veteran's schedular rating for emphysema as well as his claim for compensation based on unemployability.

## IV.

In view of the foregoing and upon consideration of the record, the appellant's brief, the Secretary's motion, and the appellant's response, it is held that the Secretary's motion for remand is denied as it pertains to the veteran's claim for individual unemployability because the record supports only a reversal on that issue. Consequently, the February 14, 1990, BVA decision is reversed. On remand the Board shall promptly award the veteran, pursuant to 38 C.F.R. § 4.16(a), a total disability rating based on unemployability and shall establish an effective date in accordance with applicable law and regulation. *See* 38 U.S.C. § 5110 (formerly § 3010); 38 C.F.R. § 3.400 (1991).

Because the BVA decision did not address the veteran's entitlement to a higher schedular rating for his pulmonary emphysema, characterized by two physicians as "severe", the record is remanded for adjudication of that issue, taking into account 38 C.F.R. § 4.7. On remand, the Board shall order, under 38 C.F.R. § 3.327(a) (1991), a thorough medical examination, to be conducted making use of the veteran's complete medical history, pursuant to 38 C.F.R. § 4.2 (1991). Appellant is free to submit to the BVA additional evidence supporting his entitlement to a higher schedular rating for pulmonary emphysema. In adjudicating this issue, the BVA shall ensure that the record is sufficient to enable review, consider all the evidence presented, including the new medical examination, and, if the evidence is in relative equipoise, resolve the issue in favor of the veteran under 38 U.S.C. § 5107(b) and 38 C.F.R. § 3.102. The Court retains jurisdiction. The Secretary shall file with the Clerk and serve upon the appellant a copy of any Board final decision on remand. Within 14 days after such filing, the appellant shall notify the Clerk whether he desires to seek further review by the Court.

REVERSED and REMANDED.