Joseph B. SOUTH, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 90–574.

United States Court of Veterans Appeals.

Aug. 19, 1992.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

This matter is before the Court on the June 3, 1992, motion by the Secretary of Veterans Affairs (Secretary) requesting that the Court grant reconsideration, or review by a panel, in order to vacate the Court's May 20, 1992, memorandum decision in this case and on the appellant's July 17, 1992, response in opposition to that motion. In that prior memorandum decision, the Court had reversed a February 14, 1990, decision of the Board of Veterans' Appeals (BVA or Board) denying the veteran's claim for a total service-connected disability rating based on individual unemployability. *South v. Derwinski,* 2 Vet.App. 414 (1992) (memorandum decision designated for publication).

The appellant, veteran Joseph B. South, had appealed the 1990 BVA decision denying him entitlement to a total service-connected disability compensation based on individual unemployability, under 38 C.F.R. § 4.16(a) (1991), resulting from service-con-nected coronary artery disease, pulmonary emphysema, and bilateral defective hear-ing. *Joseph B. South,* BVA 90–04523 (Feb. 14, 1990). On July 15, 1991, he had submit-ted a brief requesting that the Court find the Board's conclusions of fact clearly erro-neous, or, in the alternative, that the Court remand the case to the BVA. On September 19, 1991, the Secretary had moved for a remand and to stay further proceedings. The Court had reversed the 1990 BVA deci-sion as to a total rating for unemployability and ordered the award of such a rating.

Summary disposition remains appropri-ate because the case is one "of relative simplicity" and the outcome is controlled by our precedents and is "not reasonably debatable". *Frankel v. Derwinski,* 1 Vet. App. 23, 25–26 (1990). For the reasons set forth below, the Court will grant the Secre-tary's motion for reconsideration, deny as moot his motion for review, vacate its prior decision insofar as individual unemployabil-ity is concerned, and vacate the 1990 BVA decision and remand the record for readju-dication of the appellant's claim with re-spect to individual unemployability, as well as for adjudication of the question of his entitlement to a schedular disability rating above 30% for his pulmonary emphysema.

The Court takes note of the following concern raised by the appellant, in his July 17, 1992, response to the Secretary's mo-tion for reconsideration:

> By failing to provide the Court with a full brief, timely filed, in response to the Appellant's brief, the Secretary is using the motion for reconsideration improper-ly as a vehicle to "shore up" the BVA's decision.

Response to Secretary's Motion for Recon-sideration, at 3. The Court shares this concern about which the Court previously had stated over 18 months earlier:

> Advancing different arguments at suc-cessive stages of the appellate process does not serve the interests of the par-ties or the Court. Such a practice hin-ders the decision-making process and raises the undesirable specter of piece-meal litigation.

*Fugere v. Derwinski,* 1 Vet.App. 103, 105 (1990). Here, the Secretary's September 18, 1991, motion for remand failed to address the appellant's specific contention (Appellant's Brief, at 3, 7–15) that reversal was required. *See* Appellee's Motion for Remand. It is long since past time for the Secretary to cease the rote filing of motions for summary disposition without full briefing of all issues raised by an appellant and the record on appeal.

Just recently, the Court has specifically addressed this practice and pointedly emphasized to the Secretary the need for full compliance with Rule 28(b)(2) of this Court's Rules of Practice and Procedure ("If the Secretary wishes to confess error as to any issue or issues raised by appellant, but not as to all the issues raised, and the relief the Secretary deems appropriate as to the confession of error is different from that sought by the appellant, the Secretary shall include a statement of concession in the brief and identify the relief thereunder that is deemed appropriate."). *See MacWhorter v. Derwinski,* 2 Vet.App. 133 (1992).

## I.

The veteran, honorably discharged from the military in 1969, served on active duty for over 20 years. *South,* BVA 90–04523, at 2. He underwent two years of college education and obtained a law school education. *Ibid.* From 1971 through February 1982, he worked in the field of accounting, but, he contends, has been too disabled to work since the spring of 1982. R. at 19. He is presently entitled to receive service-connected disability compensation for coronary artery disease, evaluated as 60% disabling, for pulmonary emphysema, evaluated as 30% disabling, and for defective bilateral hearing, evaluated as 20% disabling. R. at 51. Together, the veteran's service-connected disabilities are evaluated as 80% disabling. *South,* BVA 90–04523, at 2; *see* 38 C.F.R. § 4.25 (1991).

On July 16, 1987, the veteran received a medical examination from the Veterans' Administration (now Department of Veterans Affairs) (VA or Department) upon his request. R. at 7. On the request form, he noted that he was unable to exert "any effort" and became "completely out of breath" when walking or engaging in any movement. R. at 8. In recording the veteran's medical history, the VA examining physician noted: "For at least 15 years he has been short of breath getting gradually worse.... 1 flight of stairs will get him completely out of breath". R. at 15. The VA physician diagnosed the veteran as suffering from, inter alia (1) "[c]hronic obstructive pulmonary disease" and (2) "[a]therosclerotic coronary artery disease with history of probable myocardial infarction without angina with mild congestive heart failure". R. at 16. The veteran's "regular rhythm" was "considerably compromised" and the prognosis was "guarded". *Ibid.* The physician made no statements regarding the veteran's ability to work.

On March 25, 1988, the veteran submitted an application to the VA for an increase in disability compensation to a total rating based on individual unemployability, which was denied by the VA Regional Office (RO) on August 29, 1988. R. at 27; *see* 38 C.F.R. § 4.16(a). In November 1988, he filed a Notice of Disagreement with the RO's decision, asserting that he had tried to work since 1982, but would become "exhausted and [could not] continue". R. at 28. In his substantive appeal to the BVA, filed on January 4, 1989, he requested that he be awarded disability compensation based on his unemployability and stated that his "breath gives out with the slightest amount of physical activity" and that "[i]t is difficult for [him] to walk more than a very short distance without stopping to rest". R. at 33. In closing his appeal, he reiterated that he was "not able to work and should be rated as total and permanent". *Ibid.* In support of his contention, the veteran submitted letters from two private treating physicians.

In the first, a letter dated January 18, 1989, Dr. Henry A. Liberman described the veteran as suffering from "coronary artery disease including an extensive anterior myocardial infarction and severe chronic lung disease with emphysema as well as several other less complicated medical conditions". R. at 34. He stated that the veteran developed "chest discomfort with

rather minimal provocation" and became "easily fatigued" and "short of breath with minimal exertion", all because of his service-connected heart and lung diseases. He concluded: "I believe that Mr. South is totally and permanently disabled and it would be hazardous for him to seek employment." *Ibid.*

In a similarly definitive letter, dated January 20, 1989, Dr. Gerald W. Staton, Jr., wrote that he had been following the veteran for several years for chronic obstructive pulmonary disease and that he was writing in support of the veteran's contention that he is totally disabled. R. at 35. He stated that then-recent pulmonary function tests showed that the veteran suffers from "a severe and irreversible obstructive defect that clearly places him in a totally disabled category". *Ibid.*

In March 1989, the veteran requested a VA medical examination, registering previously mentioned complaints and adding that he tires so much from bathing that he must lie down for 45 minutes to an hour afterwards. R. at 38. Within the March 14, 1989, report of this examination are conflicting medical opinions as to the severity of the veteran's pulmonary disease. The radiologist, who performed the chest x-ray, stated that the veteran suffered from "moderate COPD" (chronic obstructive pulmonary disease) and "mild aortic atherosclerosis". R. at 43. The examining physician, who performed the examination without the veteran's claims file, and, thus, without the veteran's history, stated in his report that the veteran suffered from "chronic obstructive pulmonary emphysema, *severe* ", and "organic heart disease". R. at 49 (emphasis added). The cardiac status and prognosis were "[m]oderately compromised; fair with therapy". *Ibid.* As with the 1987 VA examination report, this report contained no discussion of the veteran's ability to work.

On May 5, 1989, the VARO denied the veteran's request for a finding of total disability based on individual unemployability under 38 C.F.R. § 4.16(a). However, the RO did increase from 10% to 30%, for which rating the disability must be "moder-

ate", the veteran's schedular disability rating for pulmonary emphysema, even though the veteran had not explicitly raised that issue in his claim form. R. at 50; *see* 38 C.F.R. § 4.97, Diagnostic Code (DC) 6603 (1991).

On February 14, 1990, the BVA rendered a decision denying the veteran's claim for total disability compensation based on his unemployability. *South*, BVA 90–04523. In discussing the evidence before it, the Board acknowledged that the combination of the veteran's disabilities rendered him disabled, under the schedular evaluation, to a degree of 80%, and it mentioned the 1987 and 1989 VA examinations and the private treating physicians' opinions. *Id.* at 2–3. In evaluating the veteran's claim, however, the Board stated only:

A review of the evidence currently of record indicates that the veteran's principal service-connected disabilities are atherosclerotic heart disease, chronic obstructive pulmonary disease, and bilateral hearing loss. While these disabilities and other service-connected disabilities limit the range of the veteran's employment opportunities, they do not preclude all forms of substantially gainful employment.

*Ibid.*

## II.

▮ The Board's decision cannot withstand scrutiny in several respects. The Board did not explain why it rejected the opinions of the two private treating physicians, Dr. Liberman and Dr. Staton, that the veteran is totally and permanently disabled. *South*, BVA 90–04523, at 4–5. It also failed to explain its cursory and conclusory statement that the veteran's service-connected diseases do not preclude a "wide variety of sedentary tasks, not requiring strenuous manual labor". *Ibid.* The appellant's past experience in accounting should not be dispositive on the issue of unemployability, for "[t]he ability to work only a few hours a day or only sporadically is not the ability to engage in substantially gainful employment." *Moore (Robert) v. Derwinski,* 1 Vet.App. 356, 358 (1991). Moreover, despite the strong evidence in

favor of the veteran's claim, the Board did not explain the inapplicability of the benefit-of-the-doubt doctrine to his case. 38 U.S.C. § 5107(b) (formerly § 3007); *South*, BVA 90–04523, at 5. The Board's failure to explain its findings with respect to each of these matters constitutes a violation of the requirement of 38 U.S.C. § 7104(d)(1) (formerly § 4004) that the Board explain the reasons or bases for its "findings and conclusions" on "all material issues of fact and law presented in the record". *See Bailey v. Derwinski*, 1 Vet.App. 441, 447 (1991); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57, 59 (1990) (Board must identify findings crucial to decision and account for evidence which it finds persuasive or unpersuasive; if two permissible views of evidence exist, then bare conclusion that benefit-of-the-doubt doctrine does not apply is insufficient). Under the "reasons or bases" requirement, the Board must analyze "the credibility and probative value of the evidence submitted by or on behalf of the veteran in support of his claim". *Ohland v. Derwinski*, 1 Vet.App. 147, 149 (1991). Thus, on remand, the opinions of the veteran's two treating physicians must be fully considered and addressed in the BVA decision. *See Smith (Morgan L.) v. Derwinski*, 2 Vet.App. 137, 141 (1992).

Under 38 C.F.R. § 19.103(a) (1991) (to be redesignated as § 19.5, *see* 57 Fed.Reg. 4105 (1992)), the BVA is bound by the laws and regulations governing the Department. In addition, under 38 C.F.R. § 19.182(a) (1991) (to be redesignated as § 19.9, *see* 57 Fed.Reg. 4105 (1992)), when the BVA determines, during the course of review, that further evidence, clarification of the evidence, or correction of a procedural defect is essential for a proper appellate decision, the Board must remand the case to the originating agency. Here, the Board and the RO were confronted with conflicting examination reports; the treating physicians deemed the veteran's service-connected disabilities severe; with respect to the 1989 exam, the VA radiologist deemed his heart disease mild; and, during the course of the same examination, the VA examining physician deemed his "cardiac status and prognosis ... moderately compromised" and his pulmonary emphysema "severe". The Board completed its review and rendered a decision despite the failure of the RO to adhere to 38 C.F.R. § 4.2 (1991), which requires that rating specialists reconcile "various [medical examination] reports into a consistent picture". In failing to remand the case to the RO for correction of this procedural error, the Board itself erred under 38 C.F.R. §§ 19.103 and 19.182. *See Littke v. Derwinski*, 1 Vet.App. 90, 93 (1990).

The 1989 VA examination with which the Board and the RO were confronted was conducted without the veteran's claims file, and, therefore, without any knowledge of his medical history. Under 38 C.F.R. § 4.1 (1991), "[i]t is ... essential that in the examination and in the evaluation of disability, ... each disability be viewed in relation to its history". Here, too, the Board erred by failing to remand the case for completion of this task and, instead, reached a conclusion in tacit reliance on a VA examination where no claims file was reviewed. Finally, both bodies were confronted with a VA examination which did not discuss the functional impairment of the veteran, and here, too, the Board erred in tacitly relying on such an examination, for under 38 C.F.R. § 4.10 (1991) "the medical examiner [has] the responsibility of furnishing ... [a] full description of the effects of disability upon the person's ordinary activity".

■ With respect to the second issue presented by the evidence, although a request for an increase in the schedular rating for the veteran's emphysema was not squarely presented to the BVA, evidence of record strongly suggested that a higher schedular disability rating was warranted, or, at least, that the Board should have made an attempt to resolve conflicting evidence. The BVA must consider *all* the evidence before it and the legal issues arising therefrom, and it must explain its reasons or bases for its findings and conclusions with respect to those issues. *See* 38 U.S.C. § 7104(a), (d); *Douglas v. Derwinski*, 2 Vet.App. 103, 107 (1992) (*Douglas I*). In the face of one opinion by a VA radiolo-

gist that the pulmonary emphysema is "mild" stand two medical opinions by a treating and a VA physician that the veteran's pulmonary disease is "severe". To a "severe" degree of disability, the VA rating schedule assigns a 60% disability. *See* 38 C.F.R. § 4.97, DC 6603; *see also* 38 C.F.R. § 4.7 (1991) (where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability more nearly approximates its criteria).

"There is no requirement in the law that a veteran must specify with precision the statutory provisions or the corresponding regulations under which he is seeking benefits." *Akles v. Derwinski*, 1 Vet.App. 118, 121 (1991); *see* 38 U.S.C. § 7722(c), (d) (replaced § 241(2), (3)); *Douglas I*, 2 Vet.App. at 109; *EF v. Derwinski*, 1 Vet.App. 324, 326 (1991); *Morris v. Derwinski*, 1 Vet. App. 260, 264–65 (1991); *Littke*, 1 Vet.App. at 92. Thus, the Board's failure to consider, or acknowledge that it did consider, the evidence before it which strongly suggested that the veteran was entitled to a 60% schedular disability rating for his pulmonary emphysema was in violation of 38 U.S.C. § 7104(a) and (d)(1). *See Douglas v. Derwinski*, 2 Vet.App. 435, 438–40 (1992) (*Douglas II*); *Douglas I*, 2 Vet.App. at 107–08. Indeed, the RO, when presented with the same medical evidence that the BVA later would face and a substantive Form 1–9 appeal in which the veteran asked explicitly only that he be awarded compensation based on unemployability, had evaluated the veteran's schedular rating for emphysema as well as his claim for compensation based on unemployability.

▮ The Court reviews BVA factfinding under a "clearly erroneous" standard. Under 38 U.S.C. § 7261(a)(4) (formerly § 4061) and *Gilbert*, the Court must set aside a finding of material fact as clearly erroneous when the Court is left with a definite and firm conviction, after reviewing the entire evidence, that a mistake has been committed. The Court may reach that conclusion only if there is no " 'plausible basis in the record' " for the BVA findings at issue. *Gilbert*, 1 Vet.App. at 52–53 (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)); *see Moore (Robert) v. Derwinski*, 1 Vet.App. 356, 358 (1991). Here, however, the Court cannot proceed to review the merits of the Board's decision to determine whether a plausible basis exists in the record to support the Board's findings of fact since the BVA decision contains numerous errors, leaving the Court with an inadequate decision to review. *See Fluharty v. Derwinski*, 2 Vet. App. 409, 413–14 (1992) (remanding record on issue of unemployability since the Court cannot make factual determinations regarding unemployability which it is the responsibility of the BVA to make initially); *Washington v. Derwinski*, 1 Vet.App. 459, 465 (1991) (bare conclusions that appellant is capable of substantially gainful employment are insufficient); *Gilbert*, 1 Vet.App. at 56–57 (basis for administrative decision must be clear enough to permit effective judicial review; bare conclusory statement without supporting analysis and explanation does not suffice).

### III.

In view of the foregoing and upon consideration of the Secretary's motion for reconsideration and the appellant's response thereto (pursuant to the Court's order of June 19, 1992), the Court grants the motion for reconsideration, denies as moot the motion for panel review, and vacates its decision of May 20, 1992, insofar as the issue of individual unemployability is concerned. Upon further consideration of the record, the appellant's brief, the Secretary's motion for summary remand, and the appellant's response thereto, the Court grants the motion for remand with respect to the issue of individual unemployability, vacates the Board's February 14, 1990, decision, and remands the record for readjudication regarding individual unemployability, in accordance with this decision. Because the BVA decision did not address the veteran's entitlement to a higher schedular rating for his pulmonary emphysema, characterized by two treating physicians as "severe", the record is also remanded for adjudication of that issue, taking into account

38 C.F.R. § 4.7. On remand, the Board shall order, under 38 C.F.R. § 3.327(a) (1991), a thorough medical examination, to be conducted making use of the veteran's complete medical history, pursuant to 38 C.F.R. § 4.2 (1991). Since "[a] remand is meant to entail a critical examination of the justification for the decision", the Court expects the BVA to reexamine the evidence of record and seek any other evidence the Board believes is necessary to correct the defects herein addressed. *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991). The appellant will be free to submit to the BVA additional evidence and arguments supporting his entitlement to a higher disability rating. In readjudicating and adjudicating these issues, the BVA shall ensure that the record is sufficient, consider all the evidence presented, including the new medical examination, and, if the evidence is in relative equipoise on either issue, resolve the issue in favor of the veteran under 38 U.S.C. § 5107(b) and 38 C.F.R. § 3.102.

The Court retains jurisdiction as to both claims. The Secretary shall file with the Clerk (as well as serve upon the appellant) a copy of any Board decision on remand. Within 14 days after filing of such a final decision, the appellant shall notify the Clerk whether he desires to seek further review by the Court.

VACATED and REMANDED.