# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 12-1883

THOMAS C. LEAVEY, JR., APPELLANT,

V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued April 8, 2014                                                     Decided November 14, 2014)

*John R. Gibson,* with whom *Matthew S. Yungwirth* was on the brief, both of Atlanta, Georgia, for the appellant.

*Clifton A. Prince*, with whom *Will A. Gunn*, General Counsel; *David L. Quinn*, Acting Assistant General Counsel; and *Joan E. Moriarty*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.[1]

Before KASOLD, *Chief Judge*, and HAGEL, MOORMAN, LANCE, DAVIS, SCHOELEN, PIETSCH, and GREENBERG, *Judges*.[2]

KASOLD, *Chief Judge*, filed the opinion of the Court. HAGEL, *Judge*, filed an opinion concurring in part and dissenting in part. GREENBERG, *Judge*, filed a dissenting opinion in which HAGEL, *Judge*, joined in part.

KASOLD, *Chief Judge*: World War II veteran Thomas C. Leavey, Jr., appeals through counsel a May 11, 2012, Board of Veterans' Appeals (Board) decision that denied entitlement to (1) a compensable disability rating for bilateral hearing loss prior to June 9, 2009, and (2) a disability rating in excess of 10% for bilateral hearing loss from June 9, 2009. Mr. Leavey argues that, during a March 2011 hearing before the Board, the Board member conducting the hearing failed to discharge his dual duties to fully explain the issues in Mr. Leavey's case and suggest that he submit

---

[1]  As of issuance, Mr. Gunn is no longer General Counsel; Tammy L. Kennedy is Acting General Counsel.

[2]  Judge Bartley recused herself from this matter.

overlooked evidence, in violation of 38 C.F.R. § 3.103(c)(2) and this Court's holdings in *Bryant v. Shinseki*, 23 Vet.App. 488 (2010), and *Procopio v. Shinseki*, 26 Vet.App. 76 (2012). Following oral argument before a panel of the Court, the case was submitted for en banc consideration to address the scope of a Board member's duties at a hearing, including whether a Board member must explain what is needed to warrant referral for an extraschedular rating when the veteran challenges the disability rating assigned to his service-connected disorder. *See* U.S. VET. APP. INT. OP. PROC. VII(b)(2)(A).

As discussed below, the Court reiterates the holdings in *Bryant* and *Procopio*, and holds that, where the appropriate disability rating is at issue in a case, the duty to fully explain outstanding, material issues pursuant to 38 C.F.R. § 3.103(c)(2) generally requires a Board member to explain (1) that a disability rating is assigned based on the symptoms and severity of the disability, as well as its effects on employment, and (2) why the VA regional office (RO) did not assign a higher (or the highest) schedular disability rating. Moreover, the duty to explain encompasses components of the disability rating determination, such as extraschedular consideration, when such a component is at issue in the case. Although we find in this case that the Board member at Mr. Leavey's March 2011 Board hearing did not fully comply with the requirements imposed by § 3.103(c)(2), we also find that the Board member's errors were rendered not prejudicial by subsequent development of Mr. Leavey's case. Accordingly, the May 11, 2012, Board decision on appeal will be affirmed.

## I. FACTS

Mr. Leavey served honorably on active duty from May 1943 to November 1945 in the U.S. Marine Corps, including service in the Pacific Theater of World War II. He also served on active duty in the U.S. Army from September 1951 to September 1957.

In May 1998, Mr. Leavey filed a claim for VA disability benefits for right-ear hearing loss.[3] Following initial denials of his claim and a 2003 Board remand for an audiological examination, a VA examiner in November 2006 recorded hearing loss and further opined that Mr. Leavey's right-ear

---

[3] Although Judge Greenberg, joined by Judge Hagel, implies that Mr. Leavey has waited 70 years for the benefits to which he is entitled, *see post* at 28, Mr. Leavey did not seek benefits for right-ear hearing loss until 1998, or for his left-ear hearing loss until 2007, and he has not requested that his appeal be expedited at the Court.

hearing loss was at least as likely as not caused by his service in World War II. In January 2007, the RO awarded service connection for Mr. Leavey's right-ear hearing loss, effective May 18, 1998, the date of his claim, but assigned a noncompensable disability rating based on his audiological tests, *see* 38 C.F.R. § 4.85 (2006). In its rating decision, the RO addressed possible entitlement to extraschedular consideration, but found that the evidence did not reflect an unusual case inadequately contemplated by schedular standards.

In April 2007, Mr. Leavey requested an "increase for my service connected 'bilateral hearing loss,'" which the RO treated as (1) a request for a higher disability rating for his right-ear hearing loss,[4] and (2) a claim for benefits for left-ear hearing loss. R. at 613. As part of his application, Mr. Leavey submitted a March 2007 audiological examination conducted by an audiologist who was a VA employee, but acting in his private capacity in giving the examination. This audiologist recorded Mr. Leavey's bilateral hearing ability, based on puretone testing and the Maryland CNC speech discrimination test, and opined that Mr. Leavey's bilateral hearing loss as likely as not began during his service in World War II.

A September 2007 VA examiner, however, opined that Mr. Leavey's left-ear hearing loss was not "caused by or a result of military service" because he had "normal hearing of the left-ear during and shortly after military service." R. at 586. A June 2009 VA examiner also opined that Mr. Leavey's left-ear hearing loss was not caused by service because he had normal hearing shortly after separation. That examiner noted Mr. Leavey's complaint that he "can't hear the [television], wife's voice, and certain alphabet sounds," but the examiner opined that Mr. Leavey's hearing loss had no significant occupational effects and no effects on his usual daily activities. R. at 545. Both examination reports also recorded Mr. Leavey's current bilateral hearing ability.

The RO denied service connection for left-ear hearing loss, and continued Mr. Leavey's noncompensable disability rating for right-ear hearing loss. Mr. Leavey filed a Notice of

---

[4] Although Mr. Leavey's April 2007 submission was referred to in record documents as a claim for an increased disability rating, it was accompanied by the March 2007 audiological report and filed within the appeal period of the January 2007 rating decision, such that it continued his original claim for benefits. *See Mayhue v. Shinseki*, 24 Vet.App. 273, 280 (2011) ("'New and material evidence received prior to the expiration of the appeal period . . . will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period.'" (quoting 38 C.F.R. § 3.156(b))). Despite these references to a claim for an increased disability rating, the Board's statement reflects its understanding that the period of consideration for right-ear hearing loss dated back to Mr. Leavey's original 1998 claim, *see* Record (R.) at 4, such that any references to a claim for an increased rating were not prejudicial.

Disagreement (NOD), which was followed by issuance of a Statement of the Case (SOC) and Mr. Leavey's filing of a Substantive Appeal (SA).

In March 2011, Mr. and Mrs. Leavey appeared with his registered, nonattorney representative at a Board hearing. Mr. Leavey's representative noted the issues on appeal and initiated questioning of Mr. Leavey. The Board member interrupted the questioning to clarify that the issues on appeal were service connection for left-ear hearing loss and an increased rating for right-ear hearing loss. Mr. Leavey's representative agreed and then solicited information from Mr. and Mrs. Leavey regarding their understanding of the onset and degree of his hearing loss, to include, inter alia, testimony that Mr. Leavey (1) believed his hearing loss in both ears began in service, (2) continued working after service, (3) had worsening hearing since his 2009 audiological examination, and (4) had difficulty hearing his wife. The Board member asked a few clarifying questions throughout the hearing.

In May 2011, the Board granted service connection for left-ear hearing loss and remanded the matter to obtain recent treatment records and to provide another audiological examination to ascertain the current level of Mr. Leavey's bilateral hearing loss. The Board directed the examiner to "fully describe the functional effects caused by [Mr. Leavey's] bilateral hearing loss disability" and stated that Mr. Leavey had the right to submit additional evidence and argument on the remanded issues. R. at 241-42. In August 2011, Mr. Leavey underwent the requested VA audiological examination, which recorded Mr. Leavey's current bilateral hearing ability and described the functional effects of Mr. Leavey's disability. After the RO assigned a noncompensable disability rating for bilateral hearing loss in September 2011, the Board again remanded the claim in January 2012 to obtain potentially relevant treatment records not in the claims file.

Following a February 2012 SOC, the Board issued the decision on appeal in May 2012. The Board assigned a 10% disability rating for bilateral hearing loss, effective June 9, 2009, but denied entitlement to a higher disability rating for any other period. The Board found that the June 2009 VA examination report showed that Mr. Leavey was entitled to a 10% disability rating and that, even though the August 2011 VA examination failed to yield results that met regulatory thresholds for a compensable disability rating, the results of the August 2011 examination were "substantially similar to the results of the June 2009 VA examination," and the doubt was resolved in Mr. Leavey's favor.

4

R. at 15.  The Board also discussed the impact of Mr. Leavey's hearing loss on his daily life, but found that the scheduler rating criteria reasonably described Mr. Leavey's disability and that referral of his claim for extraschedular consideration was not warranted.  R. at 17.  This appeal followed.

## II.  PARTIES' ARGUMENTS

On appeal, Mr. Leavey notes the Court's caselaw that a Board member at a hearing must "fully explain the issues still outstanding that are relevant and material to substantiating the claim," and must "suggest that a claimant submit evidence on an issue material to substantiating the claim when the record is missing any evidence on that issue or when the testimony at the hearing raises an issue for which there is no evidence in the record." *Bryant*, 23 Vet.App. at 496 (citations omitted). Mr. Leavey argues that the Board member at his March 2011 Board hearing failed to (1) fully explain the issues in his appeal, including why his claim had been denied by the RO, and (2) suggest that he submit additional evidence.  He also contends that he was not told that he could submit additional lay or medical evidence regarding the functional effects of his hearing loss and its impact on his daily activities, which could lead to a referral for an extraschedular rating, since these functional effects, he alleges, are not contemplated by the mechanical rating criteria of 38 C.F.R. § 4.85 (providing disability ratings for hearing loss based on results of audiological tests).  Finally, in his reply brief and at oral argument, Mr. Leavey argued that the Court should remand his case pursuant to the U.S. Court of Appeals for the Federal Circuit's (Federal Circuit's) decision in *Nat'l Org. of Veterans Advocates, Inc. v. Sec'y of Veterans Affairs*, 710 F.3d 1328 (Fed. Cir. 2013) (*NOVA*), regarding an invalid rule VA promulgated in August 2011 related to Board hearings.

In his written briefing, the Secretary disputed Mr. Leavey's arguments.  The Secretary noted that (1) the Board member clarified the issues on appeal for those at the hearing, and (2) Mr. Leavey's representative elicited information regarding the onset, progress, and current severity of his hearing loss.  The Secretary further noted that service connection for left-ear hearing loss was granted following the hearing and, based on testimony at the Board hearing that Mr. Leavey's condition had worsened since 2009, an additional audiological examination was provided. Accordingly, the Secretary argued that any alleged failure of the Board member to discharge his duties was not prejudicial.

At oral argument, the Secretary conceded error in general (without specifying the error), but again contended that no prejudice resulted, because the Board granted service connection for Mr. Leavey's left-ear hearing loss and remanded his claim in May 2011 and January 2012 to obtain all evidence necessary to fully adjudicate the claim. The Secretary essentially argued that there simply was no more evidence to be submitted and, as a result, any error was nonprejudicial.

## III. ANALYSIS

### A. Scope of the Board Member's Duties at a Hearing

The purpose of a Board hearing is to "permit the claimant to introduce into the record, in person, any available evidence which he or she considers material and any arguments or contentions with respect to the facts and applicable law which he or she may consider pertinent." 38 C.F.R. § 3.103(c)(2) (2014).[5] In furtherance of that purpose, "[i]t is the responsibility of the [VA] employee . . . conducting the hearings to explain fully the issues and suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position." *Id.*

Otherwise stated, the Board member's role at the hearing is to assure that a claimant understands the essential issues in a given claim and what generally is required to prevail in a claim, so that the claimant can present appropriate evidence and argument during and subsequent to the Board hearing. *See Procopio*, 26 Vet.App. at 79 n.3 ("The purpose of those duties is to 'assure [the] clarity and completeness of the hearing record,' a critical . . . component of a claimant's right to a fair and full adjudication before VA." (quoting 38 C.F.R. § 3.103(c)(2))); *Bryant*, 23 Vet.App. at 501 (Lance, J., concurring in part and dissenting in part) ("[T]he purpose of a hearing is to provide the claimant with an opportunity to submit favorable evidence. The duty to fully explain the issues exists to make that opportunity meaningful by ensuring that the appellant understands what issues most likely require the submission of favorable evidence . . . ." (emphasis omitted)).

As stated in *Bryant* and *Procopio*, the duty to fully explain issues requires more than a listing of the issues on appeal or a "generic statement of the scope of the claims." *Procopio*, 26 Vet.App.

_____

[5] In *Bryant*, we held that § 3.103(c)(2) applies to Board members presiding over Board hearings. 23 Vet.App. at 496.

at 81. Although a Board member is not required to "preadjudicate or otherwise weigh conflicting evidence prior to or at the hearing," *Bryant*, 23 Vet.App. at 493, the Board member nevertheless "has a duty to fully explain the issues still outstanding that are relevant and material to substantiating the claim," *id.* at 496, which requires a discussion regarding why the claim was denied by the RO, i.e., "the missing elements in [the] claims." *Procopio*, 26 Vet.App. at 81.

As to claims for benefits where service connection is at issue, the Board member generally is required to explain (1) the elements for establishing service connection, *see Bryant*, 23 Vet.App. at 493 (finding that it does not take preadjudication for a Board member at a hearing to note "that–for a disability compensation claim–the issues are status as a veteran, injury or disease in service, current disability, and nexus between the current disability and the injury or disease in service."), and (2) which elements remain unfulfilled according to the RO, *see Bryant*, 23 Vet.App. at 496 ("[W]hen the RO has denied a disability claim because there is no current disability, no nexus to service, or no incident in service, etc., then . . . the Board hearing officer's explanation and discussion should be centered on these issues.").

As to claims for benefits where the appropriate disability rating is at issue, the Board member generally is required to explain (1) that a disability rating is assigned based on the symptoms and severity of the disability, as well as its effects on employment, and (2) why the RO did not assign a higher (or the highest) schedular disability rating, *see Procopio*, 26 Vet.App. at 81 (Board member must explain "the missing elements in [the] claims"); *AB v. Brown*, 6 Vet.App. 35, 38 (1993) (claimant is presumed to be seeking the maximum benefit allowed by law and regulation). Moreover, if the diagnostic code employed by the RO is premised on a specific measurement or test result rather than a review of the symptoms and severity of the disability, the Board member generally should explain that requirement for the higher disability rating.[6] *Cf. Ingram v. Nicholson*, 21 Vet.App. 232, 256-57 (2007) ("It is the pro se claimant who knows what symptoms he is

_____

[6] In *Vazquez-Flores v. Peake*, 22 Vet.App. 37, 43 (2008), *rev'd on other grounds sub nom. Vazquez-Flores v. Shinseki*, 580 F.3d 1270 (Fed. Cir. 2009), we held that notice of the kind stated in the text accompanying this footnote was required to be provided to a claimant upon the filing of an increased rating claim pursuant to 38 U.S.C. § 5103(a), but the Federal Circuit overturned that holding because it determined that section 5103(a) did not require such specific notice. *See* 580 F.3d at 1277. Board hearings, however, are governed by the requirements of § 3.103(c)(2), and–in contrast to notice required by section 5103(a), which is designed to be rendered before a claim has been developed and therefore is generic in nature–a Board hearing is an individualized, "personal" hearing, *Arneson v. Shinseki*, 24 Vet.App. 379, 382 (2011), that occurs after the claim has been developed and an RO decision has been rendered.

experiencing and that are causing him disability, . . . . [and] it is the Secretary who knows the provisions of title 38 and can evaluate whether there is a potential under the law to compensate an averred disability based on a sympathetic reading of the material in a pro se submission." (citations omitted)).

Similarly, if referral for extraschedular consideration is at issue in the case, the Board member should discuss 38 C.F.R. § 3.321(b)(1); i.e., explain that referral for an extraschedular rating is warranted when the record reflects an "exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards."[7]  *Cf. Anderson v. Shinseki*, 22 Vet.App. 423, 429 (2009) (extraschedular rating consideration is a component of the determination regarding the appropriate disability rating).  And, of course, if other issues come up during the course of the hearing that appear outstanding and material to the increased rating claim, § 3.103(c)(2) requires the Board member to explain them as well.  *See, e.g.*, *Rice v. Shinseki*, 22 Vet.App. 447, 449 (2009) ("TDIU [total disability based on individual unemployability] is best understood as part of an initial claim . . . [or] claim for increased compensation."); *Bradley v. Peake*, 22 Vet.App. 280, 294 (2008) (special monthly compensation is "to be accorded when a veteran becomes eligible without need for a separate claim").

---

[7]  Although Judge Greenberg submits that extraschedular consideration should be discussed at *every* Board hearing, such a suggestion ignores the fact that such consideration is for exceptional cases where the rating schedule is inadequate, *see* 38 C.F.R. § 3.321(b) (2014) (permitting referral for extraschedular consideration in "[e]xceptional cases"), and therefore not warranted or even appropriate for discussion at a Board hearing unless extraschedular consideration is at issue in the case. *See Bryant*, 23 Vet.App. at 496 ("[W]hen an element of the claim is not an issue in an appellant's case, there is no need for the hearing officer to discuss it.").

Additionally, although Judge Hagel believes that extraschedular consideration is *always* at issue in hearing loss claims because such claims are rated on a mechanical application of the rating criteria, *Lendenmann v. Principi*, 3 Vet.App. 345, 349 (1992), a referral for extraschedular consideration requires both a showing of (1) an exceptional disability picture not contemplated by the rating schedule and (2) the presence of governing norms, such as marked interference with employment or frequent hospitalization, *Thun v. Peake*, 22 Vet.App. 111, 115-16 (2008). Accordingly, extraschedular consideration is not raised in a given case unless the matter is raised by the claimant or there is evidence of *both* these requirements, and there is no basis for presuming that *every* hearing loss case involves an exceptional disability picture with governing norms such as marked interference with employment or frequent hospitalization.

In terms of practice, the relevant administrative-appeal and decisional documents generally will provide the framework for most of the discussion.[8]  In particular, the Board should look to the most recent decisional document—which may be the most recent SOC or Supplemental SOC considering additional evidence—and explain to the claimant what element or elements of the claim were found deficient by that decision and what types of evidence would help assist the appellant in prevailing as to those issues.  *See Bryant*, 23 Vet.App. at 496 n.3 ("The RO's rating decision and Statement of the Case . . . will likely assist the hearing officer in identifying the outstanding issues."); *see also* 38 U.S.C. § 7105(d)(1) (SOC shall include, inter alia, "[a] citation to pertinent laws and regulations and a discussion of how such laws and regulations affect the agency's decision").

To be sure, as we held in *Bryant*, and emphasize today, although Board hearing officers have to be familiar with the claims file, a Board member is not required to preadjudicate a claim, or assess the credibility and probative value of the record evidence to determine the missing elements in that claim.  *See Bryant*, 23 Vet.App. at 493 ("Nothing in § 3.103(c)(2) supports the appellant's contention that the regulation requires a hearing officer to preadjudicate or otherwise weigh conflicting evidence prior to or at the hearing.").  Nor is the Board member required to mine the record for all latent issues, or discuss what regulations are potentially applicable to all such issues, or explain all possible routes to benefits.  *Id.* at 496 ("[W]hen an element of the claim is not an issue in an appellant's case, there is no need for the hearing officer to discuss it.").

Moreover, although the Board member must be engaged at the hearing, *see id.*, there is no inherent violation of § 3.103(c)(2) when a Board member asks minimal questions or turns the hearing over to a representative.[9]  The aforementioned requirements ultimately are the responsibility of the Board member, but, in short, it does not matter who does the talking, as long as the hearing transcript reflects that (1) the issues on appeal were fully explained, (2) the submission of overlooked evidence was suggested, and (3) the claimant understood the outstanding issues material to

[8]  The "relevant administrative-appeal and decisional documents" generally include the RO decision, NOD, SOC, SA, and any Supplemental SOC.

[9]  Although the Court was critical of the Board member in *Procopio* who "turned the hearing over to Mr. Procopio's [nonattorney] representative and did not ask *any* questions," 26 Vet.App. at 81 (emphasis in original), the primary basis for the reproach was the Board member's inaction in the face of (1) Mr. Procopio's testimony "clearly reflect[ing] that he was unaware of what type of evidence was necessary to prove" his claim, and (2) Mr. Procopio's representative proceeding under a false assumption that a nexus opinion would substantiate the claim, *id.* at 82.

substantiating his claim. *See Thomas v. Nicholson*, 423 F.3d 1279, 1285 (Fed. Cir. 2005) (Board members at a hearing are not required to question on any particular theory of benefits unless it is needed "to assure clarity and completeness of the hearing record"). This will "'assure [the] clarity and completeness of the hearing record.'" *Bryant*, 23 Vet.App. at 492 (quoting 38 C.F.R. § 3.103(c)(2)).

There are times, of course, when a Board member fails to fulfill his duty to explain the issues and suggest overlooked evidence. When that occurs, as in any case when error occurs, the statute requires us to take due account of the rule of prejudicial error. 38 U.S.C. § 7261(b)(2). In the context of Board hearing errors, instead of reflexively remanding, our assessment of prejudice "is case specific, demonstrated by the appellant and based on the record." *Bryant*, 23 Vet.App. at 498; *see also Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009) (noting that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination" and rejecting a special rule otherwise in veterans benefits cases).[10]

The purpose for the Board hearing is to explain the outstanding issues in a case, allow a claimant to present testimony, and suggest overlooked evidence. However, if the purpose is ultimately fulfilled after the fact by the conveying of additional information, evidentiary development, or the submission of additional evidence, then the claim has not been negatively affected, i.e., there is no prejudice. *See Overton v. Nicholson*, 20 Vet.App. 427, 435 (2006) ("[I]f the error does not affect the 'essential fairness' of the adjudication[,] then it is not prejudicial." (quoting *McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 553 (1984))).

---

[10] Judge Hagel notes that the U.S. Supreme Court's decision in *Sanders* does not prohibit this Court from making, based on our "informed judgment," "empirically based generalizations about what kinds of errors are likely, as a factual matter, to prove harmful." 556 U.S. at 411-12. But there is no empirical evidence supporting a generalized determination that Board hearing errors are naturally prejudicial, particularly where, as here, the Board remands the matter for additional development following the hearing. Further, the Supreme Court also noted (1) its previous admonitions "against courts' determining whether an error is harmless through the use of mandatory presumptions and rigid rules rather than case-specific application of judgment, based upon examination of the record," and (2) its understanding that Congress "sought to discourage" presumptions that "may lead courts to find an error harmful, when, in fact, in the particular case before the court, it is not." *Id.* at 407-08. Accordingly, we decline Judge Hagel's suggestion to implement a rule that Board hearing errors in cases where the claimed disability is hearing loss are presumptively prejudicial.

B. Application

As noted above, Mr. Leavey was accompanied by Mrs. Leavey and represented by his registered, nonattorney representative at the March 2011 Board hearing. The issues were, as the Board member noted, service connection for left-ear hearing loss and the appropriate disability rating for right-ear hearing loss. But, because Mr. Leavey was contesting his assigned disability rating and the RO explicitly denied referral for an extraschedular rating, this too was an issue on appeal, and the Board member should have advised Mr. Leavey that it was an issue before the Board.

*1. Service Connection for Left-Ear Hearing Loss*

As to service connection for left-ear hearing loss, the hearing transcript reflects the representative's questions on whether Mr. Leavey incurred or suffered from hearing loss in service, whether any medical opinions linked his hearing loss to service, and his postservice occupation, as well as the Board member's questions on when Mr. Leavey's left-ear hearing loss began and the state of his hearing over the years. Although the Board member did not explain why the claim was denied by the RO (*see* R. at 385-86 (SOC denying benefits based on lack of nexus)), the representative specifically asked about nexus, and Mr. Leavey testified about the connection between his hearing loss and service, as well as the March 2007 audiological report opining of such a connection. Overall, the hearing transcript reflects an understanding by Mr. Leavey and his representative regarding the outstanding issue material to establishing service connection for his left-ear hearing loss, such that the "clarity and completeness of the hearing record" was assured. 38 C.F.R. § 3.103(c)(2).

Moreover, the record does not reflect any failure of the Board member to suggest overlooked evidence. This duty relates to situations "when the record is *missing* any evidence on [an] issue [material to substantiating the claim] or when the testimony at the hearing raises an issue for which there is no evidence in the record," *Bryant*, 23 Vet.App. at 496 (emphasis added), and–by the time of the Board hearing–Mr. Leavey had already submitted an audiological opinion on the nexus issue. Succinctly stated, Mr. Leavey fails to demonstrate any violation of § 3.103(c)(2) as it pertains to his

left-ear hearing-loss claim.[11] *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (holding that the appellant has the burden of demonstrating error), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table).

## 2. Increased Rating for Right-Ear Hearing Loss

As to an increased rating for right-ear hearing loss, the hearing transcript reflects the representative's questions on Mr. Leavey's current hearing condition, his employment postservice, and whether his condition has gotten worse since 2009. But neither the Board member nor Mr. Leavey's representative discussed why the RO did not assign a higher (or the highest) schedular disability rating, or what was needed to have his claim referred for extraschedular consideration—despite the RO explicitly considering and denying referral for extraschedular consideration. *See* R. at 650. Moreover, reviewing the hearing transcript as a whole, it is not clear that Mr. Leavey understood what evidence was needed to obtain a higher schedular disability rating or referral for extraschedular consideration. To that extent, the Board member did not fulfill the dictate of § 3.103(c)(2) to fully explain the outstanding issues material to substantiating the claim and ensure the "clarity and completeness of the hearing record" in this case.

On the other hand, the record does not reflect any failure of the Board member to suggest overlooked evidence. By the time of the Board hearing, the record already contained numerous audiological evaluations documenting the current severity of Mr. Leavey's hearing loss, including one private audiological examination submitted by Mr. Leavey. There was a June 2009 VA examination report in the record that addressed the occupational effects of Mr. Leavey's hearing loss and the effects on his usual daily activities. *See Martinak v. Nicholson*, 21 Vet.App. 447, 455-56 (2007) (Secretary is required to ensure that VA medical examiners obtain evidence about the functional effects of hearing loss specifically). Other record evidence also addressed the functional effects of Mr. Leavey's hearing loss. *See* R. at 678 (November 2006 VA examination revealing difficulties with "soft speech" and talking on the telephone), 619 (March 2007 private audiological examination revealing "traditional challenges hearing and understanding in the presence of

---

[11] Even assuming some deficiency at the Board hearing with regard to the left-ear hearing-loss claim, we note that Mr. Leavey was granted service connection for this disability two months after the Board hearing, such that any possible deficiency was not prejudicial to the claim. *See Bryant*, 23 Vet.App. at 498 (reviewing Board member's error for prejudice).

background noise and when in group situations"), 545 (June 2009 VA examination revealing difficulties hearing the television, his wife's voice, and "certain alphabet sounds"), 167 (July 2009 VA audiology consult revealing difficulties hearing the television and hearing his wife in conversation both at home and "at home in noise").  Further, Mr. Leavey and his wife both testified at the hearing regarding the functional effects of Mr. Leavey's hearing loss.  On this record, the hearing discussion did not reveal any additional evidence that might be available that had not been submitted.  Succinctly stated, Mr. Leavey fails to demonstrate error in this regard.  *See Hilkert*, *supra*.

Moreover, Mr. Leavey fails to demonstrate prejudice from the failure of the Board member to fully explain the outstanding material issues.  *See Sanders*, 556 U.S. at 409-10.  Specifically, although Mr. Leavey argues that, but for the Board member's failure to apprise him that evidence of his disability's functional effects could lead to an extraschedular rating, he may have obtained additional audiology tests or other evidence detailing the impact of his hearing loss, the Secretary correctly notes that, following the March 2011 hearing, the Board issued a decision remanding Mr. Leavey's claim "for a VA examination in order to assess the current severity of [his] service-connected right ear hearing loss," based on assertions during the hearing that "his hearing ha[d] gotten worse since the June 2009 examination."  R. at 240.  The remand emphasized that, in addition to conducting the appropriate audiological testing, "[t]he examiner should also fully describe the functional effects caused by the [appellant]'s bilateral hearing loss disability."  R. at 241.  The record reflects that an August 2011 audiological examination included the necessary tests and that the examiner described the functional-effects evidence.  After the Board hearing, Mr. Leavey also submitted additional statements describing the functional effects of his disability, which were specifically addressed by the Board.

Although a claimant can always speculate that obtaining *one more* audiological examination or providing *one more* lay statement would have made the difference in his case, we find here that the evidence necessary to fully and properly adjudicate the claim was obtained and that there is no indication that Mr. Leavey had any additional, material information to submit.  Accordingly, we further find that "the purpose of § 3.103(c)(2) was fulfilled."  *Bryant*, 23 Vet.App. at 499; *see also Sanders*, 556 U.S. at 409-10.

13

Stated otherwise, because the Board remanded this matter specifically to obtain, and in fact did obtain, the evidence that Mr. Leavey suggests he would have submitted but for the failure of the Board member conducting the hearing, the Court can discern no prejudice.[12]

## C. Alternative Argument

In his reply brief and at oral argument, Mr. Leavey argued that the Court should remand his case pursuant to the Federal Circuit's *NOVA* decision and subsequent orders. *See Nat'l Org. of Veterans Advocates, Inc. v. Sec'y of Veterans Affairs*, 517 F. App'x 940 (Fed. Cir. 2013) (*NOVA II*); *Nat'l Org. of Veterans Advocates, Inc. v. Sec'y of Veterans Affairs*, 725 F.3d 1312 (Fed. Cir. 2013) (*NOVA III*). In summary, those orders required the Secretary to identify and remedy cases in which Board decisions were based on an invalid August 2011 rule purporting to exempt employees conducting Board hearings from the duties to fully explain the issues on appeal and suggest the submission of any overlooked evidence. *See Smith v. Shinseki*, 26 Vet.App. 406, 407-08 (2014). The Secretary conceded that the rule was invalid based on his failure to follow the mandatory notice and comment requirements of the Administrative Procedure Act. *Id.* at 407. In *NOVA III*, the Federal Circuit approved a plan whereby the Secretary would conduct a search for veterans affected during the period the invalid rule was in effect and notify them that the Secretary would be willing to vacate the Board decisions and grant them another hearing. 725 F.3d at 1314.

Succinctly stated, Mr. Leavey fails to demonstrate that the *NOVA* orders apply to this case. Mr. Leavey's Board hearing took place in March 2011, but the Secretary's invalid rule was not issued

[12] Judge Greenberg comments that it is impossible to know what Mr. Leavey might have submitted had he understood how to substantiate his claim, *see post* at 26, but our colleague fails to consider the fact that the very issues that the Board member failed to explain at the hearing were either substantiated (i.e., service connection) or further developed (i.e., functional effects of disability). Mr. Leavey subsequently was provided an audiological examination that addressed the functional effects of his disability. He also made additional statements regarding the functional effects of his disability that reflect actual knowledge on his part of the need for such evidence. Our statutory obligation to take due account of the rule of prejudicial error mandates consideration of these facts. *See* 38 U.S.C. § 7261(b)(2).

Moreover, although Judge Greenberg asserts that the majority is deciding this case with a view to "protecting the public fisc" at the expense of "all veterans who continue to suffer harmful delays as a result of VA error," *post* at 28, it appears to us that reflexively remanding all cases in which a *Bryant* error occurred and a veteran asserts, without proof or specifics, that he would have submitted additional evidence, would force the Secretary to review and readjudicate claims where an error is harmless, in contravention of *Sanders*, and would further slow the already heavily burdened VA adjudicatory system to the detriment of most veterans, without benefit to the individual veteran. *See* 556 U.S. at 409 (holding that courts should avoid rules that "increase the likelihood of reversal in cases where, in fact, the error is harmless. . . . [T]hat likelihood encourages abuse of the judicial process and diminishes the public's confidence in the fair and effective operation of the judicial system.").

14

until August 2011, suggesting that the Board member's error was not based on applying the wrong rule, but was instead based on his falling short of the existing "right" rule. *See* 76 Fed. Reg. 52,572-01 (Aug. 23, 2011). Moreover, in the decision on appeal, the Board did not state that *Bryant* had been replaced by a new rule, or that Board members at a hearing were not required to fully explain the issues on appeal or suggest the submission of any overlooked evidence, or otherwise indicate any reliance on the invalid rule.

## IV. CONCLUSION

Because the Board member's error at the hearing did not prejudice Mr. Leavey, and because Mr. Leavey makes no other persuasive arguments for remand, the May 11, 2012, Board decision on appeal is AFFIRMED.

HAGEL, *Judge*, concurring in part and dissenting in part: I concur in the result reached by the majority and would affirm the Board decision on appeal. Otherwise, I am pleased to join Judge Greenberg's dissenting opinion, except to the extent that (1) he would find the failure to discuss the possibility of referral for extraschedular consideration error in all cases, (2) he would find that all hearing officer errors are presumptively prejudicial, and (3) he dissents from the result. I write separately to expand on the importance of the hearing in the VA claims adjudication process, particularly as it relates to unrepresented claimants, and to explain the ways in which I would go further than the majority in assessing hearing officer errors in claims for benefits for hearing loss.

The Court has been slow to examine what I believe is one of the most important–if not the most important–procedural rights accorded to veterans in the claims adjudication process: the right to a hearing before a member of the Board of Veterans' Appeals (Board). The Court began its sojourn on this issue by affirming that 38 C.F.R. § 3.103(c)(2) (1991) applied to Board hearing officers in *Douglas v. Derwinski*, 2 Vet.App. 103 (1992), and has continued to expand the breadth of the right to a hearing and the duties of the hearing officer. Our most recent case on the subject is *Procopio v. Shinseki*, 26 Vet.App. 76 (2012).

15

In considering the critical nature of this phase of the adjudication process, it is important to keep in mind that VA is in the business of *assisting* veterans to obtain the benefits to which they are entitled. *See generally* 38 U.S.C. § 5103A (outlining VA's duty to assist claimants in developing evidence to substantiate their claims). To be sure, this responsibility entails weeding out claims that have no basis, but even then the Agency's purpose is to help, not impede, the veteran in the development of evidence to support the claim and in understanding the issues involved in the claim's substantiation. VA itself has recognized–indeed, advocated–this role to courts and to Congress. *See, e.g.*, *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305 (1985); *Judicial Review of Veterans' Affairs: Hearing Before the H. Comm. on Veterans' Affairs*, 100th Cong. 78-79, 446-58 (1988) (testimony of VA General Counsel Donald L. Ivers) [hereinafter Hearing Testimony].

In *Walters*, veterans challenged the constitutionality of 38 U.S.C. § 3404(c) (1985), which made it a crime for anyone assisting a veteran in an attempt to obtain his or her veterans benefits to charge or accept more than $10 in compensation. VA defended the statute. Interestingly, VA's primary justifications for defending the $10 fee limitation were that (1) free representation was available to veterans through employees of the various veterans service organizations and, thus, there was no need to permit a lawyer to share in the benefits due the veteran; and (2) VA acted in a paternal fashion to assist the veteran in every way possible to obtain benefits. In short, VA took the position that its "paternalistic interest in protecting the veteran from his own improvidence would unquestionably justify a rule that simply prevented lawyers from overcharging their clients." *Walters*, 473 U.S. at 365 (Stevens, J., dissenting).

The 1985 testimony of the VA General Counsel before the House Committee on Veterans' Affairs expressed the Agency's opposition to the enactment of the Veterans Judicial Review Act, which would grant veterans the right to independent judicial review of Agency decisions. In defense of VA's position against passage of that legislation, the General Counsel testified that

> VA affords claimants de novo factual review by collegial bodies at both the initial and appellate stages, employing adjudicators with specialized knowledge of veterans law and medical expertise. Informal, nonadversarial hearings are provided upon request, and reasonable doubt in matters of evidence is resolved in the claimants' favor. Moreover, the Agency has instituted stringent quality control procedures to ensure the accuracy of its decisions.

Hearing Testimony at 452-53.

Thus, when opposing pieces of legislation, both of which Congress later enacted, VA argued that the hallmarks of its veteran-friendly system of adjudication were its informal, nonadversarial hearings and the de novo review by collegial bodies. Indeed, VA reasoned that the application of those procedures was so veteran-friendly that there was simply no need for lawyer representation in the administrative process or for judicial review of the outcome of that process. The Veterans' Judicial Review Act, which eliminated the $10 fee limitation and instituted judicial review, did nothing to change these elements of the VA claims process. It is therefore difficult for me to understand why VA should be so opposed to requiring its hearing officers to fully explain the issues before them and to inform the claimant of evidence that could be provided to VA to help demonstrate that the claimant is entitled to the benefit sought. It is even stranger that the majority indulges VA's resistance to this view by limiting VA's stated obligation in this regard.

The VA adjudication process is comprised of various stages, each designed to inform the veteran of (1) his or her rights, (2) VA's decisions made during the course of the claim's adjudication, and (3) the reasons for those decisions. First, at the time the claim is filed, VA provides the veteran with a letter that describes what is required to substantiate the claim, details what is the veteran's responsibility, and explains what responsibility is assigned to VA. *See* 38 U.S.C. § 5103(a). This places the veteran in the position to find evidence, perhaps known only to the veteran, that might support the claim. Second, VA informs the veteran of its decision on the claim. *See* 38 U.S.C. § 5104. On most occasions, the actual rating decision is enclosed with the letter of notification. While the contents of the letter are very general, the rating decision sets forth the issue before VA, the evidence considered, the decision on the claim, and the reasons and bases for the decision. 38 U.S.C. § 5104(b). The letter and decision also explain how the veteran can obtain review of the decision. 38 U.S.C. § 5104(a). If the decision is adverse to the veteran and the veteran disagrees with the decision, the veteran may file a Notice of Disagreement. *See* 38 U.S.C. § 7105(a). VA then sends the veteran a Statement of the Case. 38 U.S.C. § 7105(d)(1). That document is intended to be a more detailed explanation of VA's decision, along with the text of all the regulations that are potentially applicable to a decision on the claim. *See id.* If the veteran still disagrees with the denial, he may submit his claim to the Secretary for a final review by filing a Substantive Appeal to the Board. *See* 38 U.S.C. § 7105(d)(3).

17

Although the procedure described above is well known to those who regularly tread the oft hazardous ground of the law of veterans benefits, I believe it important to recount it. This recitation, I trust, illustrates the fact that the final chance for a veteran to make his or her voice heard is at the Board. Thus, when the right to a hearing is invoked, the veteran can actually speak to and be spoken to by the very person who will decide the veteran's case. *See* 38 U.S.C. § 7107(c). As it was with Dorothy and her sidekicks the Tin Man, the Cowardly Lion, and the Scarecrow, it is the veteran's opportunity to peek behind the curtain that heretofore has masked the institution and then to engage with the person who really pulls the levers. *See Arneson v. Shinseki*, 24 Vet.App. 379, 383 (2011).

This being the case, I believe that the term "hearing" is an unfortunate choice. As Judge Greenberg points out, the word "hearing" gives off the aura of a sterile, judicial setting in which one adversary squares off against another, each armed with its own evidence and plying the technical rules of procedure and evidence to "win" the case. From my reading of VA's own regulations, and from the history cited above, this setting is far from what VA intends that this engagement between the usually unrepresented veteran and the Agency decisionmaker to be. Were I to name this event, I would instead call it a "meeting," as that term better represents the interaction that VA has so often described should occur between a veteran and the Agency. In its simplest terms, it provides the opportunity for the veteran to ask the very questions a young child asks his parents when denied a toy that he believes has been promised to him: "Why can't I have it?" and "How can I get it?" I believe the veteran is entitled to an answer more satisfying than the one that I often gave my own children: "Because I said so."

With this understanding, I conclude that it is time for the Court to revisit the duty of the Board member regarding preadjudication. We have already held that the duties under 38 C.F.R. § 3.103(c) are dual: to explain the issues and to suggest the submission of overlooked evidence that could substantiate the claim. *Bryant v. Shinseki*, 23 Vet.App. 488, 492 (2010). We also stated in *Bryant* that the Board member has a duty to review the record prior to the hearing. *Id.* at 493. VA's own statute requires that the person who conducts the hearing must be the same person who actually makes the decision. 38 U.S.C. § 7107(c). VA regularly holds the record open after the hearing to permit the claimant to submit additional evidence prior to a final decision. Why, then, is there not an obligation to, during the course of the already mandated review prior to the hearing, make at least

18

initial judgments on the credibility and weight of the evidence already of record and inform the veteran of what additional evidence is needed to succeed?

It appears to me that preadjudication should be the rule and, indeed, would make the hearing more meaningful to the veteran and more true to VA's stated desire (and statutory duty) to assist the veteran. Remember, VA is not in the business of finding ways to deny benefits to veterans; VA is in the business of assisting veterans in obtaining all of the benefits to which they are entitled. I fail to see that preadjudication places any additional burden on the Board member, because all that is required is for the member to do before the hearing what he currently must do after it. Moreover, preadjudication would speed up a process that has traditionally been criticized, rightly or wrongly, for its tortoise-like speed.

Additionally, I take issue with this portion of the majority's decision:

> Moreover, although the Board member must be engaged at the hearing, there is no inherent violation of § 3.103(c)(2) when a Board member asks minimal questions or turns the hearing over to a representative. The aforementioned requirements ultimately are the responsibility of the Board member, but, in short, it does not matter who does the talking, as long as the hearing transcript reflects that (1) the issues on appeal were fully explained, (2) the submission of overlooked evidence was suggested, and (3) the claimant understood the outstanding issues material to substantiating his claim. This will "'assure [the] clarity and completeness of the hearing record.'"

*Ante* at 9-10 (citations and footnote omitted). The majority state that there is *no error* on the part of the hearing officer in these circumstances, but I cannot agree. The duties to explain the issues and suggest the submission of overlooked evidence are, by regulation, assigned to the hearing officer, and the failure to execute them is an "inherent violation" of § 3.103(c)(2) regardless of what the hearing transcript shows. The burden of ensuring that the claimant understands the issues and evidence necessary to substantiate his or her claim cannot be foisted onto the claimant, particularly one who is either self-represented or represented by a nonattorney. It seems to me that what the majority are really saying is that the error on the part of the hearing officer is *nonprejudicial* if the hearing transcript shows, essentially, actual knowledge on the part of the claimant of the issues and the evidence necessary to substantiate the claim. I agree, as discussed further below.

19

With this as background, I turn to the merits of this case and why I believe that the majority decision should go much further.

It is statutorily established that, before the Board renders a decision on a claim, the claimant must be afforded an opportunity for a Board hearing. 38 U.S.C. § 7107(b) ("The Board shall decide any appeal only after affording the appellant an opportunity for a hearing."). The purpose of VA hearings is "to permit the claimant to introduce into the record, *in person*," pertinent evidence and arguments with respect to his claim, including personal testimony from the claimant or witnesses under oath or affirmation. 38 C.F.R. § 3.103(c)(2) (emphasis added); *see* 38 C.F.R. § 20.700(a) (2014) ("A [Board] hearing on appeal will be granted if an appellant . . . expresses a desire to appear in person."). As the Court has previously acknowledged,

> [u]nlike a traditional judicial appeal where review is of the record, the opportunity for a personal hearing before the Board is significant because *it is the veteran's one opportunity to personally address those who will find facts, make credibility determinations, and ultimately render the final Agency decision on his claim.*

*Arneson*, 24 Vet.App. at 382 (emphasis added). The Court has also previously acknowledged the unique nature and importance of the hearing officer's duties under § 3.103(c)(2), holding that errors by hearing officers are unlike notice errors in other contexts, such that preadjudicatory notice of the elements necessary to establish entitlement to benefits is not sufficient to render a hearing officer's error harmless. *See Bryant*, 23 Vet.App. at 498.

The United States Supreme Court has held that "courts may sometimes make empirically based generalizations about what kinds of errors are likely, as a factual matter, to prove harmful." *Sanders v. Shinseki*, 556 U.S. 396, 411 (2009) (citing *Kotteakos v. United States*, 328 U.S. 750, 760-61 (1946)). The Supreme Court also stated that this Court is the proper authority "to exercise an informed judgment as to how often veterans are harmed by which kinds of notice errors." *Id.* at 412. In my informed judgment, the failure to explain the possibility of referral for consideration of an extraschedular disability rating and to suggest evidence that would support the assignment of that rating in claims for benefits for hearing loss are per se errors and are presumptively prejudicial.

*Schedular* disability ratings for hearing loss are assigned based solely on the mechanical application of the results of specified hearing examinations to a chart published as part of 38 C.F.R. § 4.85. *See Lendenmann v. Principi*, 3 Vet.App. 345, 349 (1992); *see also* 38 C.F.R. §§ 4.85 (2014),

4.86 (2014), 4.87 (2014). Because of this, the Court has held that VA audiology examiners are required to discuss the functional effects of a claimant's hearing loss. *See Martinak v. Shinseki*, 21 Vet.App. 447, 455 (2007). Such a discussion is necessary specifically to permit the adjudicator to consider whether referral for consideration of an extraschedular disability rating is warranted. *Id.* ("Unlike the rating schedule for hearing loss, [38 C.F.R.] § 3.321(b) does not rely exclusively on objective test results to determine whether a referral for an extraschedular rating is warranted."). It follows, then, and I would hold today, that *in all cases where the claimed disability is hearing loss*, and regardless of whether the claim has already been granted, (1) the hearing officer must advise a claimant that there is a possibility of referral for consideration of an extraschedular disability rating, which takes into account factors other than objective audiological test results; and (2) the hearing officer must suggest the submission of evidence related to the functional effects of hearing loss, if such evidence is not already in the record.

In light of the importance of the hearing in the VA claims adjudication process, as well as the necessity of developing evidence describing the functional effects of hearing loss, and consistent with the guidance of *Sanders*, I would additionally hold–again, in claims for benefits for hearing loss–that the failure of a hearing officer to explain the possibility of referral for consideration of an extraschedular disability rating or to suggest the submission of overlooked evidence related to the functional effects of hearing loss is presumptively prejudicial, subject to rebuttal by the Secretary. In other words, I conclude that such errors have, in the run of cases concerning claims for benefits for hearing loss, the "natural effect" of causing harm to the claimant. *Sanders*, 556 U.S. at 412.

Although it is true that the Court in the past has only considered the concept of the natural effect of prejudice in preadjudication notice cases, the definition in those cases is clear and equally applicable here.

> When notice [under 38 U.S.C. § 5103(a) of] how to substantiate a claim is wholly defective as to a key element needed to substantiate the claim, such that the absence of evidence on the key element will result in denial of the claim, the natural effect is that the claimant is deprived of a meaningful opportunity to participate in the processing of his claim.

*Vazquez-Flores v. Shinseki*, 24 Vet.App. 94, 105 (2010). Here, and in virtually all claims for benefits for hearing loss, entitlement to monetary disability compensation greater than that provided

by the mechanical application of hearing examination results to the charts in § 4.85 can only be established through the assignment of an extraschedular disability rating. In cases of claims for benefits for hearing loss, referral for consideration of an extraschedular disability rating depends *entirely* on the record evidence of the functional effects of a claimant's hearing loss. As a result, if a claimant is not aware that such a possibility exists, or he is not told what kind of evidence is needed to establish entitlement to that benefit–that is, when notice is "wholly defective"–he is naturally deprived of the opportunity to submit testimony and other evidence that is likely uniquely within his knowledge and that the adjudicator cannot divine by mechanically comparing the objective scores obtained from hearing tests to the values contained in the charts used to assign schedular disability ratings.

It is well settled that VA must adjudicate all issues expressly raised by the claimant *or* reasonably raised by the record. *See Robinson v. Shinseki*, 557 F.3d 1355, 1361-62 (Fed. Cir. 2009) (holding that the Board is obligated to consider arguments or issues raised by the record, even if not raised by the claimant, and suggesting that the Board errs if it fails to do so). Here, as in the majority of cases before VA, Mr. Leavey was unrepresented by counsel at the time of his Board hearing and could not reasonably be expected to be aware of, let alone expressly raise, the tangential issue of the possibility of an extraschedular disability rating. The fact that claimants before VA are, generally speaking, legally unsophisticated and unrepresented by counsel weighs heavily in favor of a finding that–at least with respect to hearing loss, which is unique among the conditions considered in the disability rating schedule–the question of entitlement to referral for extraschedular consideration is *always* reasonably raised by the record and, therefore, the principle underlying *Robinson* should require the hearing officer to discuss it.

In Mr. Leavey's case, VA considered the possibility of referral for consideration of an extraschedular disability rating exactly once prior to the Board hearing, and then only cursorily, in the January 2007 regional office decision that concerned only Mr. Leavey's claim for benefits for right ear hearing loss. R. at 650 ("Consideration was given to possible entitlement to an extra-schedular evaluation for this condition. This is not warranted as there is no evidence that the current issue presents such an unusual disability case as to render impractical the application of the regular standards."). A July 2009 Statement of the Case contains the text of 38 C.F.R. § 3.321(b) in its

22

nearly 30-page recitation of the potentially applicable laws (R. at 368-69), but (1) that issue is not discussed in the regional office's analysis (R. at 383-86); and (2) the Federal Circuit has already held that postdecisional documents are not sufficient to put claimants on notice of the elements necessary to establish entitlement to benefits, *see Mayfield v. Nicholson*, 444 F.3d 1328, 1334-35 (Fed. Cir. 2006), a principle that should apply equally in this context, given the importance of the hearing in the VA adjudication process.

Having said all this, in Mr. Leavey's case I would find that (1) the hearing officer erred by failing to explain the issues present in the case, namely the possibility of referral for consideration of an extraschedular rating, but that the Secretary has carried his burden of demonstrating that the error is nonprejudicial; and (2) there was no error on the part of the hearing officer in failing to suggest the submission of overlooked evidence.

With respect to the error in explaining the issues, I note first that VA undertook additional development, including providing a new audiological examination and obtaining additional treatment records, after the Board hearing took place. The audiologist who examined Mr. Leavey in August 2011 described the functional limitations that his hearing loss will likely cause. The record also contains numerous statements made by Mr. Leavey and his wife describing the functional effects of his disorder. Second, Mr. Leavey's claims were granted: He was awarded service connection for left ear hearing loss and he was ultimately assigned a 10% disability rating for bilateral hearing loss. In other words, the record ultimately contained the evidence–whether it existed at the time of the hearing or whether it was developed during the post-hearing remand–necessary to support Mr. Leavey's claims. "Accordingly, the 'clarity and completeness of the hearing record' was intact with respect to these disabilities and the purpose of § 3.103(c)(2) was fulfilled." *Bryant*, 23 Vet.App. at 499 (quoting 38 C.F.R. § 3.103(c)(2)). I would therefore conclude that the Secretary has rebutted the presumption of prejudice resulting from the hearing officer's error.

As to the assertion that the hearing officer failed to suggest the submission of evidence, the Court has been clear that the duty to suggest evidence under § 3.103(c)(2) is only violated "when the record is missing any evidence on [an] issue [material to substantiating the claim] or when the testimony at the hearing raises an issue for which there is no evidence in the record." *Bryant*, 23 Vet.App. at 496. In this case, at the time of the March 2011 Board hearing, evidence material to

23

substantiating Mr. Leavey's claims included (1) evidence regarding the severity of his right ear hearing loss, (2) evidence that his left ear hearing loss was caused by service, and (3) evidence of the functional effects of his hearing loss to permit the adjudicator to determine whether referral for consideration of an extraschedular disability rating was warranted.

There is no dispute that, at the time of the March 2011 Board hearing, the record already contained numerous audiological evaluations demonstrating the current severity of Mr. Leavey's right ear hearing loss, including one private examination that he submitted himself. R. at 678-81 (November 2006 VA examination), 619-23 (March 2007 private examination), 582-86 (September 2007 VA examination), 544-48 (June 2009 VA examination). There was also evidence that he was exposed to acoustic trauma in service, R. at 1034-35 (March 1999 Notice of Disagreement), 709 (March 2006 joint motion for remand), 678 (November 2006 VA examination), 619 (March 2007 private audiological examination), 617 (April 2007 statement in support of claim), 545 (June 2009 VA examination), and that his left ear hearing loss was related to service, R. at 619-23 (March 2007 private examination), 166-67 (July 2009 VA audiology consult). Finally, there was also evidence in the record regarding the functional effects of Mr. Leavey's hearing loss. R. at 678 (November 2006 VA examination revealing difficulties with "soft speech" and talking on the telephone), 619 (March 2007 private audiological examination revealing "traditional challenges hearing and understanding in the presence of background noise and when in group situations"), 545 (June 2009 VA examination revealing difficulties hearing the television, his wife's voice, and "certain alphabet sounds"), 167 (July 2009 VA audiology consult revealing difficulties hearing the television and hearing his wife in conversation both at home and "at home in noise"). Mr. Leavey and his wife both also testified at the hearing regarding the functional effects of Mr. Leavey's hearing loss. R. at 253-55. The hearing discussion did not reveal any additional evidence that might be available that had not been submitted. "Under these circumstances, nothing gave rise to the possibility that evidence had been overlooked." *Bryant*, 23 Vet.App. at 497. Accordingly, I would conclude that the hearing officer did not violate this portion of his duty under § 3.103(c)(2).

As a final matter, I note that–whatever the ultimate duty of the hearing officer is found to be by the Court–it is crucial that the duty not be reduced to a rote, formulaic recitation of boilerplate language. The purpose of the hearing is too important, and–particularly by the time the case reaches

the Board–the issues too specifically defined for a one-size-fits-all statement that simply ticks the boxes on an imaginary (or actual) checklist. The Board member conducting the hearing should be sufficiently versed in the record such that the outstanding issues are clear and the missing evidence is, well, evident, as it were, and he or she should therefore be more than capable of discharging the duties under § 3.103(c) in an individualized fashion.

GREENBERG, *Judge*, with whom HAGEL, *Judge*, joins in part, dissenting: I dissent. At issue is a veteran-friendly regulation, consistent with the Congressional intent as old as the Republic. *See Hayburn's Case*, 2 U.S. (2 Dall.) 409, 410 n., 1 L. Ed. 436 (1792) ("[T]he objects of this act are exceedingly benevolent, and do real honor to the humanity and justice of [C]ongress."); *see* 1 Stat. 243 ("An Act to provide for the settlement of the Claims of Widows and Orphans barred by the limitations heretofore established, and to regulate the Claims to Invalid Pensions."). The regulation here, 38 C.F.R. § 3.103(c)(2), is unnecessarily limited by the Court's opinion. That opinion wrongly diminishes the importance of Board hearings to the veteran. First, the hearing is an essential aspect of a veteran's claim and should be subject to exacting scrutiny to ensure its fairness and compliance with the law. Second, VA must consider referrals for extraschedular rating in all compensation claims, and that issue must be discussed at the hearing. Third, hearing errors should be presumptively prejudicial and should not be overlooked based upon the Secretary's or this Court's *intuition* that all evidence that could have been submitted was submitted.

When a veteran seeks a hearing before the Board, "[i]t is the responsibility of the VA employee . . . conducting the hearings to explain fully the issues and suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position." 38 C.F.R. § 3.103(c)(2). The hearing officer must "fully explain the issues still outstanding that are relevant and material to substantiating the claim," and must "suggest that a claimant submit evidence on an issue material to substantiating the claim when the record is missing any evidence on that issue or when the testimony at the hearing raises an issue for which there is no evidence in the record." *Bryant v. Shinseki*, 23 Vet.App. 488, 496 (2010) (per curiam) (citations omitted). A "generic statement of the scope of the claims" will not suffice; the Board must explain

25

why the claim was denied, *i.e.*, "the missing elements in his claims." *Procopio v. Shinseki*, 26 Vet.App. 76, 81 (2012). In fact, it was Congress that guaranteed veterans, by statute, the opportunity for a hearing before the Board. 38 U.S.C. § 7107(b) ("The Board shall decide any appeal only after affording the appellant an opportunity for a hearing.").

The Secretary's regulation provides that a Board member "may also be known as a Veterans Law Judge," 38 C.F.R. § 19.2, but members of the Board are appointed by the Secretary and thus are VA employees. Members of the Board are *not* independent from, but in fact must ensure compliance with, the Congressional mandate that VA "make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate . . . the claim." 38 U.S.C. § 5103A(a).

VA must consider extraschedular referral for every veteran's compensation claim. *See* 38 C.F.R. § 3.321(b)(1) (2014); *see also Thun v. Peake*, 22 Vet.App. 111, 115-116 (2008). Accordingly, extraschedular consideration is an issue that must be fully explained at a Board hearing. *See Bryant*, 23 Vet.App. at 496.

When a Board member fails to explain the issues on appeal or suggest the submission of additional evidence, it is impossible to know what the veteran could have said or submitted in support of the claim. When the Court cannot say with confidence whether the veteran could have submitted additional evidence or argument to support the claim in the absence of the Board hearing officer's error, "prejudice arises from the failure of the hearing officer to assure the clarity and completeness of the hearing record . . . and the lost additional opportunity to try and submit such evidence before his claim finally was adjudicated." *Bryant*, 23 Vet.App. at 499 (internal quotation marks and citations omitted) (citing *Wagner v. United States*, 365 F.3d 1358, 1365 (Fed. Cir. 2004) ("Where the effect of an error on the outcome of a proceeding is unquantifiable . . . , we will not speculate as to what the outcome might have been had the error not occurred").

Here, the presiding VA employee provided no statement concerning the issue of referral for extraschedular consideration, which was an issue on appeal; no explanation of why the regional office denied the veteran's claims below; no suggestion, in light of the mention of the veteran's prior employment as a hospital administrator, that the veteran provide evidence of the impact of his disability on that employment; and no discussion of the severity of the veteran's right ear hearing loss, also at issue. *See* R. at 246-57. The Board member failed to make *any* statement suggesting

26

that the veteran obtain evidence related to an issue apparent from the record or mentioned at the hearing, much less perform his specific duties.

The Board member's errors prevented the veteran from effectively participating in his own case. The veteran cannot demonstrate with rigorous specificity the harm he suffered–the evidence he certainly would have submitted or the arguments he absolutely would have raised–to show prejudice, because the Board member's failures kept him from knowing how to appropriately pursue his claim. The VA claims adjudication process is nonadversarial. The veteran is not expected to arrive at VA prepared to take on the agency. Instead, VA is supposed to reasonably assist the veteran in making the best claim he or she can, including explaining the law. *See* 38 U.S.C. §§ 5103, 5103A; *Robinson v. Peake*, 21 Vet.App. 545, 559 (2008) (Schoelen, J., dissenting) ("VA's duty to assist the claimant is the cornerstone of the nonadversarial claims adjudication system the Agency is meant to operate"). Applying strict prejudicial error rules adopted for the adversarial trial system, where parties are expected to fend for themselves, harms a veteran when the assistance aspect of the VA nonadversarial adjudication system breaks down, as it did here, and exposes him or her to potentially devastating consequences for merely trusting VA to perform its duties. *See Shinseki v. Sanders*, 556 U.S. 396, 412 (2009).

The veteran who elects to personally appear before a Board member at a hearing, often without legal representation, deserves the opportunity to fully present his or her best case and personally persuade the authority that will decide the claim that the benefits sought are warranted. Although the hearings are non-adversarial, they effectively represent the veteran's day in court, when the veteran may personally vindicate his or her position before the Board member. The hearing is a critical juncture in the VA claims process, but when the Board member fails to engage with the veteran and explain the case, as happened here, it becomes a hollow charade. The Court should not have overlooked such an error when the veteran plausibly suggested that relevant evidence could have been submitted in the absence of the error. Here, the error was clear, but the effect of whatever evidence the veteran could marshal is anything but clear.

This veteran served in the Pacific during World War II as a member of the Marine Corps. He was on board the carrier U.S.S. *Wasp* under unremitting enemy kamikaze attack. He never left his post. He never stopped engaging the enemy by firing his anti-aircraft weapon. He is 89 years

old.  During the entire pendency of this appeal, he has requested that his claim be expedited, "because of my age and frailty."  R. at 25.

In the immortal words of the great American war poet: *Once to every man and nation comes the moment to decide.*  The veteran *decided* to serve his nation in combat, bravely and in a manner that brought a valor commendation.  Nearly 70 years have passed.  The Secretary has violated the law and his own regulation.  Because we are acting as an Article III Court in reviewing the Secretary, *see Henderson v. Shinseki*, 131 S. Ct. 1197, 1201 n. 2 (2011), we possess all the power to correct that violation of the law by the application of equity.  *See* U.S. Const. art. III, § 2, cl. 1.  However, this Court lacks the evidence necessary to effect such a decision, which is why affirmance by this Court is premature.  Although the majority is concerned with protecting the public fisc, it does so at the expense of this veteran and future veterans waiting their turns to speak with the Board.  We must not lose sight of this 89-year-old's reality, and of all veterans who continue to suffer harmful delays as a result of VA error.